Decided 10 December, 1900.

## KING *v*. PORTLAND.

[63 Pac. 2.]

PUBLIC IMPROVEMENTS — LEGISLATIVE POWER — RIGHT TO HEARING.

1. A legislature has plenary power to determine, without notice to any one, the amount of money to be raised for a public purpose and the district to be taxed to raise that amount, and these questions may, in the legislative discretion, be determined absolutely by an act, or may be referred to commissions or local boards.

LOCAL APPORTIONMENT OF COST OF PUBLIC IMPROVEMENT.

2. Where the legislature has delegated to a board or other body the power to determine and apportion the amount of taxes for special benefits to realty, the proceeding for that purpose is quasi judicial, and the owners of property affected must be given an opportunity to be heard on the amount of tax to be assessed against their respective lands.

PUBLIC IMPROVEMENT — MANNER OF NOTICE OF ASSESSMENT.

3. The manner of giving notice to property owners of a proposed charge on their lands for a public improvement, and the length of such notice, are not of particular importance, so long as reasonable opportunity is afforded such owners for a hearing on the amounts to be assessed against their respective lands: *Wilson* v. *City of Salem*, 24 Or. 504, cited.

RULE IN LEVYING SPECIAL ASSESSMENTS FOR LOCAL IMPROVEMENTS.

4. Special assessments for local improvements are sustained on the theory that by the proposed improvement a particular part of the community will be especially benefited, owing to its location with reference to the place where the funds are to be expended, but this rule necessarily requires, conversely, that in no case must the amount of the assessment exceed the value of the benefits received. An assessment so limited is not in conflict with the state constitution, article I, § 32, requiring that "all taxation shall be equal and uniform."

CONSTITUTIONAL LAW — ASSESSMENT FOR PUBLIC IMPROVEMENT.

5. A statute requiring a city council to assess against abutting lots in a city the cost of improving the half street immediately in front of such lots, and providing that the cost of improving street intersections shall be assessed five-ninths to the first fifty feet, and the remainder to the next fifty feet, in the abutting quarter blocks does not provide a rule for assessing the cost of such improvement that makes the charge against each lot evidently so in excess of or out of proportion to the benefits received as to be a taking of property for public use without compensation, in violation of the United States Constitution, Amendment 5.

NOTICE OF PROPOSED LOCAL IMPROVEMENT — DUE PROCESS OF LAW.

6.   A statute providing that before street improvements are made the council shall pass a resolution declaring its intention to make the same, which resolution shall be published for ten consecutive days in a newspaper and posted at certain places, and that the property owners may file their remonstrances with the auditor within ten days thereafter, sufficiently provides an opportunity for interested property owners to be heard on the questions of costs and benefits, and as to the apportionment of the expenses, and hence the law is not in violation of the Constitution of the United States, Amendment 14, as being a taking of property without due process of law.

FRONT FOOT RULE OF ASSESSMENT FOR PUBLIC IMPROVEMENTS.

7.   The front foot rule of assessment for street improvements is as near proportionate as any rule that can be devised in a case where the improvement consists of an elevated roadway over slightly uneven ground, and the assessment varies according to the height of the structure in front of the different lots.

From Multnomah: JOHN B. CLELAND, Judge.

Suit for an injunction by A. N. King and others against the City of Portland and others to enjoin the enforcement of a local assessment for a street improvement, consisting of an elevated roadway extending along East Yamhill Street, between East Water Street and Union Avenue, in the City of Portland.   The charter provisions bearing upon the present controversy (Laws 1898, p. 150), are, in substance, as follows:   Sections 126 and 127 authorize the improvement. Section 128 requires that, before any improvement is made, the common council shall pass a resolution declaring its intention to make it, and describing the same, which resolution shall be posted in the office of the auditor and published for ten consecutive days in a daily newspaper of the city, and that the city engineer shall cause to be posted a notice at each end of the line of the contemplated improvement, which shall state the fact of the adoption of the resolution, its date, the character of the improvement proposed, and the time within which written objection or remonstrance may be

made thereto. Section 129 provides that within ten days after the official publication of notice the owners of more than one-half of the abutting property may file with the auditor written objection or remonstrance, which shall be a bar to further proceedings unless the owners of one-half or more of such property shall subsequently petition therefor. Section 130 provides that, if no such objection or remonstrance be filed, the council shall be deemed to have acquired jurisdiction to order the improvement to be made, and shall, within four months from the date of the final publication of the resolution of intention, declare by ordinance the time and manner of said improvement. Section 131 provides that the auditor shall immediately transmit a copy thereof to the board of public works and the city engineer, and said board shall include, as a part of the costs of such improvement, the cost of advertisement, etc. Section 132 provides that said board shall without delay cause the engineer to prepare and file estimates and specifications of the amount of such work or improvement, and thereupon give five days' notice, and invite proposals for doing the work. Section 133 provides that said board shall, at the time set, examine the proposals and let the work. Section 136 provides that the auditor shall make the assessment and apportionment of the expenses of said improvement, in the mode and manner provided by section 138. Section 137 provides that whenever any improvement, the expense of which is to be assessed against the property benefited thereby, has been completed in whole or in such proportion as shall enable the said board to determine the cost of the whole thereof, the city engineer shall file a written acceptance of the work so completed. Thereupon the board shall publish a notice of such completion and acceptance for six consecutive insertions in the official newspaper, stating the time and place where written objections to the acceptance of the improvement may be heard. At the time fixed, any owner or agent may appear

and file objections to such improvement, which shall be heard and determined by the board; and, if it appear that the said improvement has not been completed in accordance with the specifications and contract, it shall not be approved until so completed. When approved, the board shall indorse the same upon the acceptance of the engineer, and file a copy with the auditor, together with the contract and the estimated expenses of advertising, etc.

It is also provided in section 138 that the auditor shall thereupon prepare an assessment to cover the entire cost of such work or improvement, and apportion the same to the property affected thereby within the limits of such work or improvement, as declared by the ordinance authorizing the same, in the manner following: "Each lot or part thereof within the limits of a proposed street improvement abutting upon the street shall be liable for the full cost of making the same upon half of the street in front of and abutting upon it, and also for a proportionate share of the cost of improving the intersections of two of the streets bounding the block in which such lot or part thereof is situated. * * * The cost of improving the intersection of streets, unless otherwise ordered by the council, shall be assessed upon the lots or parts thereof situated in the quarters of the four regular blocks adjoining such intersections, but only upon the lots or parts thereof within the quarter blocks nearest thereto and in the following proportion: Five-ninths of the cost to the corner or first fifty feet; and four-ninths of the cost to the lot next inside, or the next fifty feet as laid out on the recorded plats." Section 139 provides that when the probable cost of the improvement has been ascertained, and the proportionate share assessed to each lot, the common council must declare the same by ordinance, and direct the auditor to enter a statement in the docket of city liens. Sections 140, 141, and 142 provide for a docket of city liens and the entry of the assessment therein, but that the same shall not be col-

lected until by order of the common council; that ten days' notice shall be given of the entry; and that if, within thirty days from the first publication of such notice, the sum assessed is not wholly paid, the council shall thereafter order the issuance of a warrant to enforce the collection of the same. Section 158 provides that "the proceedings authorized by this chapter for the establishment or alteration of a grade or the improvement of a street or any part thereof may be taken or had without giving notice prescribed in section 128, whenever the owner or owners of two-thirds of the adjacent property shall, in writing, petition the council therefor. And whenever any street or part thereof shall be in such condition as to become impassable, unsafe or dangerous to persons or teams passing on, along or over the same the council may declare the same by resolution, and may thereupon cause the improvement of such street to be made, upon giving ten days'. notice by publication in any paper of said city, and no remonstrance shall be heard thereto." The decree of the court below being in favor of the defendants, the plaintiffs appeal.　　　　　AFFIRMED.

For appellants there was an oral argument by *Mr. Martin Luther Pipes,* with a brief over the name of *Pipes & Tifft* to this effect:

Our first proposition is that the charter of the City of Portland, under which this improvement was made, is in conflict with the constitution of the state, and of the United States. It is in conflict with the constitution of the state, article I, sections 10, 18, and 32, and article IX, section 1; and with the Fourteenth Amendment of the Constitution of the United States in that it provided for taking plaintiff's property without due process of law. The rule of assessment that places the whole burden upon particular property, without apportionment, is not taxation, but taking property without compensation for public use: *Thomas* v. *Gain,* 35

Mich. 155 (24 Am. Rep. 535); *Village of Norwood* v. *Baker,* 172 U. S. 269 (19 Sup. Ct. 187); *Agens* v. *Mayor,* 37 N. J. Law, 415 (18 Am. Rep. 729); *Tidewater Co.* v. *Coster,* 18 N. J. Eq. 518 (90 Am. Dec. 634); *Matter of Canal Street,* 11 Wend. 154; Cooley, Tax., 453-454; Cooley, Const. Lim. (3 ed.), p. 508; *Hutcheson* v. *Storrie,* 92 Tex. 685 (71 Am. St. Rep. 884, 51 S. W. 848, 45 L. R. A. 289); *City of Seattle* v. *Yesler,* 1 Wash. Ter. 571; *Dexter* v. *City of Boston,* 176 Mass. 247 (57 N. E. 379, 79 Am. St. Rep. 306)..

A rule of assessment that charges each lot with the cost of the improvement in front of it is void: *Village of Norwood* v. *Baker,* 172 U. S. 269 (19 Sup. Ct. 187); *Motz* v. *Detroit,* 18 Mich. 495; *Davis* v. *City of Litchfield,* 145 Ill. 313 (21 L. R. A. 563, 33 N. E. 888); Burroughs, Tax., 465, note 5; *People* v. *Lynch,* 51 Cal. 15, 23 (21 Am. Rep. 677); *Chicago* v. *Larned,* 34 Ill. 203; *Illinois Cent. R. R. Co.* v. *City of Bloomington,* 76 Ill. 447; *City of New Whatcom* v. *Bellingham Bay Co.,* 10 Wash. 378 (38 Pac. 163); *State* v. *Jersey City,* 37 N. J. Law, 129; *St. John* v. *City of East St. Louis,* 50 Ill. 92; *Hutcheson* v. *Storrie,* 92 Tex. 685 (71 Am. St. Rep. 884, 51 S. W. 848, 45 L. R. A. 289).

A rule of assessment is void that is not based upon benefits to the property assessed, and the assessment limited to the benefits: *Re Bonds of Madera Irr. Dist.,* 92 Cal. 296 (27 Am. St. Rep. 106, 14 L. R. A. 755, 28 Pac. 272 and 675); *Village of Norwood* v. *Baker,* 172 U. S. 269 (19 Sup. Ct. 187); *McKee* v. *Pendleton,* 154 Ind. 652 (57 N. E. 532); *Mobile County* v. *Kimball,* 102 U. S. 691-704; *Railroad Co.* v. *Decatur,* 147 U. S. 190, 202 (13 Sup. Ct. 293); *Hutcheson* v. *Storrie,* 92 Tex. 685 (45 L. R. A. 289, 71 Am. St. Rep. 884, 51 S. W. 848); *Bauman* v. *Ross,* 167 U. S. 548-589 (17 Sup. Ct. 966); *Masters* v. *Portland,* 24 Or. 161, 167 (33 Pac. 540); *City of Bloomington* v. *Chicago & Alton R. R. Co.,* 134 Ill. 458 (26 N. E. 366); *Town of Elma* v.

*Carney,* 9 Wash. 466 (37 Pac. 709) ; *Alleghany City* v. *Western Pa. R. R. Co.,* 138 Pa. St. 375 (21 Atl. 763) ; *Illinois Cent. R. R. Co.* v. *Bloomington,* 76 Ill. 447; *Bridgeport* v. *New York, etc., R. R. Co.,* 36 Conn. 255 (4 Am. Rep. 63) ; *Hammett* v. *City of Philadelphia,* 65 Pa. St. 146 (3 Am. Rep. 615) ; *Chicago* v. *Larned,* 34 Ill. 279; *Tidewater Co.* v. *Coster,* 18 N. J. Eq. 518 (90 Am. Dec. 634) ; *Wilson* v. *City of Salem,* 24 Or. 504 (34 Pac. 9) ; *Paulsen* v. *Portland,* 16 Or. 450-460 (1 L. R. A. 673, 19 Pac. 450) ; *Or. & Cal. R. R. Co.* v. *Portland,* 25 Or. 229 (22 L. R. A. 713, 35 Pac. 452, 46 Am. & Eng. Corp. Cas. 295) ; *Charles* v. *City of Marion,* 98 Fed. 166; *Lyon* v. *Town of Tonawanda,* 98 Fed. 361*; *Fay* v. *City of Springfield,* 94 Fed. 409.

The benefits must be special—that is, must make the property more accessible or more enjoyable in its use, and do not include benefits common to the community nor those merely speculative: *Tidewater Co.* v. *Coster,* 18 N. J. Eq. 518 (90 Am. Dec. 634) ; *New York R. R. Co.* v. *New Haven,* 42 Conn. 279 (19 Am. Rep. 234) ; *State* v. *Elizabeth,* 40 N. J. Law, 274; *State* v. *Elizabeth,* 37 N. J. Law, 330; *City of Boston* v. *Shaw,* 1 Metc. (Mass.), 130.

Property that from its physical situation cannot be benefited cannot be assessed for improvements, and the courts will inquire into and decide this question: *Or. & Cal. R. R. Co.* v. *City of Portland,* 25 Or. 229 (22 L. R. A. 713, 35 Pac. 452, 46 Am. & Eng. Corp. Cas. 295) ; *City of Bloomington* v. *Chicago & Alton R. R. Co.,* 134 Ill. 458 (26 N. E. 366) ; *Alleghany City* v. *Western Ry. Co.,* 138 Pa. St. 375 (21 Atl. 763) ; *State* v. *Elizabeth,* 37 N. J. Law, 330.

The owner must have notice and an opportunity to contest the amount of his assessment and the extent of his benefits: *Paulsen* v. *City of Portland,* 149 U. S. 30 (13 Sup. Ct. 753) ; *Tidewater Co.* v. *Coster,* 18 N. J. Eq. 519 (90 Am.

*Note.—This decision was reversed on appeal, 181 U. S. —— (21 Sup. Ct. 609).—Reporter.

Dec. 634) ; *Philadelphia* v. *Miller*, 49 Pa. St. 440-448; *Butler* v. *Supervisors*, 26 Mich. 22; *Wilson* v. *City of Salem*, 24 Or. 504, 509 (34 Pac. 9) ; *Cook* v. *City of Portland*, 35 Or. 383 (58 Pac. 353) ; *City of Norfolk* v. *Young*, 97 Va. 728 (47 L. R. A. 574; 34 S. E. 886) ; *Charter of Portland*, § 123 (Laws 1891, p. 829).

For respondents there was an oral argument by *Mr. Joel M. Long*, City Attorney, with a brief over the names of *J. M. Long, R. R. Duniway* and *Fred W. Mulkey*, to this effect :

The allegation in plaintiffs' complaint that the proceedings were "null and void and constitute an attempt by the said city to take the property of plaintiffs away from them without due process of law, contrary to the fourteenth amendment," etc., is simply a legal conclusion : *Dewey* v. *City of Des Moines*, 173 U. S. 193 (19 Sup. Ct. 379) ; *Powell* v. *Brunswick County*, 150 U. S. 433 (14 Sup. Ct. 166) ; *Allen* v. *City of Portland*, 35 Or. 420-456 (58 Pac. 509) ; *Shannon* v. *Portland*, 38 Or. — (60 Pac. 50-53) ; *Bolln* v. *Nebraska*, 176 U. S. 83-91 (20 Sup. Ct. 287).

The plaintiffs had due process of law when the council caused notice to be published that this street was about to be improved because of its dangerous condition : UNITED STATES—*Fallbrook Irrig. Dist.* v. *Bradley*, 164 U. S. 112 (17 Sup. Ct. 56) ; *Paulsen* v. *Portland*, 149 U. S. 30 (13 Sup. Ct. 750) ; *Lent* v. *Tillson*, 140 U. S. 316 (11 Sup. Ct. 825, 37 Am. & Eng. Corp. Cas. 265) ; *Wurts* v. *Hoagland*, 114 U. S. 691 ; *Kelly* v. *Pittsburg*, 104 U. S. 78; *Spencer* v. *Merchant*, 125 U. S. 345 (8 Sup. Ct. 921) ; *Hager* v. *Reclamation Dist.*, 111 U. S. 701; *Walston* v. *Nevins*, 128 U. S. 578 (9 Sup. Ct. 192, 27 Am. & Eng. Corp. Cas. 198) ; *Davidson* v. *Board of Adm'rs.*, 96 U. S. 97; *McMillen* v. *Anderson*, 95 U. S. 37; *Palmer* v. *McMahan*, 133 U. S. 660; *Bellingham Bay Co.* v. *New Whatcom*, 172 U. S. 318 (19

Sup. Ct. 205) ; *Parsons* v. *Dist. of Columbia,* 170 U. S. 45 (18 Sup. Ct. 521) ; *Mattingly* v. *Dist. of Columbia,* 97 U. S. 667; *King* v. *Mullins,* 171 U. S. 404 (18 Sup. Ct. 925) ; *Scott* v. *City of Toledo,* 36 Fed. 385; *Murdock* v. *Cincinnati,* 44 Fed. 726. California—*Hagar* v. *Yolo County,* 47 Cal. 234; *Hutson* v. *Woodbridge Protec. Dist.,* 79 Cal. 90 (16 Pac. 549, 21 Pac. 435) ; *Lent* v. *Tillson,* 72 Cal. 404 (14 Pac. 71, 19 Am. & Eng. Corp. Cas. 640) ; *In re Madera Irrig. Dist. Bonds,* 92 Cal. 296 (14 L. R. A. 755, 27 Am. St. Rep. 106, 28 Pac. 272, 275). Georgia—*Speer* v. *Mayor of Athens,* 85 Ga. 49 (32 Am. & Eng. Corp Cas. 301, 11 S. E. 802). Illinois—*Hyde Park* v. *Spencer,* 118 Ill. 446 (8 N. E. 846) ; *McChesney* v. *Hyde Park,* 28 N. E. Rep. 1102. Indiana—*Garvin* v. *Daussman,* 114 Ind. 429 (16 N. E. 826, 5 Am. St. Rep. 637) ; *Reinken* v. *Fuehring,* 130 Ind. 382 (15 L. R. A. 624, 30 Am. St. Rep. 247, 37 Am. & Eng. Corp. Cas. 354, 30 N. E. 414) ; *Law* v. *Johnson,* 118 Ind. 261 (20 N. E. 745). Iowa—*Gatch* v. *Des Moines,* 63 Iowa, 718 (18 N. W. 310) ; *Stewart* v. *Polk County,* 30 Iowa, 9 (1 Am. Rep. 238). Kentucky—*Nevin* v. *Roach,* 86 Ky. 492 (5 S. W. 546). Maryland—*Ulman* v. *Baltimore,* 72 Md. 587 (11 L. R. A. 224). Massachusetts—*Allen* v. *Charlestown,* 111 Mass. 123; *Hildreth* v. *Lowell,* 11 Gray (Mass.), 345. Minnesota—*State ex rel.* v. *Dist. Court,* 42 Minn. 262 (44 N. W. 59). Missouri—*Springfield Cent. Nat. Bank* v. *Weaver,* 137 Mo. 650 (37 S. W. 509) ; *St. Louis* v. *Ranken,* 96 Mo. 497; *Eyerman* v. *Blakesley,* 78 Mo. 145. Nebraska—*Hurford* v. *Omaha,* 4 Neb. 336. New York—*In re De Peyster,* 80 N. Y. 565; *Stuart* v. *Palmer,* 74 N. Y. 184 (30 Am. Rep. 289) ; *In re Ryers,* 72 N. Y. 1 (28 Am. Rep. 88) ; *Town of Guilford* v. *Cornell,* 18 Barb. 615; *Astor.* v. *New York,* 37 N. Y. Sup. Ct. 539; *Matter of Amsterdam,* 126 N. Y. 158. Oregon—*Paulsen* v. *Portland,* 16 Or. 450 (1 L. R. A. 673, 19 Pac. 450). South Dakota—*Tripp* v. *Yankton,* 10 S. Dak. 516 (74 N. W. 447). Texas—*Loven-*

*berg* v. *Galveston,* 17 Tex. Civ. App. 162 (42 S. W. 1024). VIRGINIA—*Davis* v. *Lynchburg,* 84 Va. 861 (6 S. E. 230). WASHINGTON—*Hansen* v. *Hammer,* 15 Wash. 315 (46 Pac. 332). WISCONSIN—*Meggett* v. *City of Eau Claire,* 81 Wis. 326 (51 N. W. 566) ; *State ex rel.* v. *Stewart,* 74 Wis. 620 (43 N. W. 947) ; *Hennessy* v. *Douglas County,* 99 Wis. 129 (74 N. W. 983).

The council gave the notices provided for by section 128 of the charter. This was notice to the property-owners, and was due process of law : *Bellingham Bay Co.* v. *New Whatcom,* 172 U. S. 318 (19 Sup. Ct. 205) ; *Kentucky Ry. Cases,* 115 U. S. 331; *Adams* v. *City of Shelbyville,* 3 Minn. 575; *Barkley* v. *Oregon City,* 24 Or. 515 (33 Pac. 978) ; *Hood River Lumbering Co.* v. *Wasco County,* 35 Or. 498 (57 Pac. 1017) ; *Wilson* v. *City of Salem,* 24 Or. 504 (34 Pac. 9) ; *Ladd* v. *Spencer,* 23 Or. 193 (31 Pac. 474).

As herein shown, the courts, both federal and state, with the exception of Tennessee, practically hold that the legislature of a state, in the absence of constitutional restriction, has the power to select a taxing district, provided that all persons subject to such legislation shall be treated alike, under like circumstances and conditions, both in the privileges conferred and in the liabilities imposed in the manner of selecting a district that shall bear the burdens of a given tax, or special assessment, and that it is not contrary to the Fourteenth Amendment of the Constitution of the United States for the legislature to make such a selection, and that the fourteenth amendment was not designed to interfere with the states in making this selection, it is therefore constitutional and valid : *Barber* v. *Connolly,* 113 U. S. 27; *Norwood* v. *Baker,* 172 U. S. 269 (19 Sup. Ct. 187) ; *Pacific Express Co.* v. *Siebert,* 142 U. S. 339 (12 Sup. Ct. 250) ; *Western Union Tel. Co.* v. *State of Indiana,* 165 U. S. 309 (17 Sup. Ct. 345) ; *New Orleans* v. *Light Co.,* 116 U. S. 650-661 ; *Jones* v. *Brim,* 165 U. S. 180 (17 Sup. Ct. 282) ;

*Ladd* v. *Gambell,* 35 Or. 393 (59 Pac. 113) ; *Fallbrook Irri. Dist.* v. *Bradley,* 164 U. S. 112 (17 Sup. Ct. 56).

The idea of classification, or the selection of a class of property to pay for an assessment, as under our law, a district for sewers, adjacent and intersections for street improvement, is the legislative idea of equality, and the fact that in a given case there may be an inequality in no manner determines the constitutionality of the assessment: *Ladd* v. *Gambell,* 35 Or. 393 (59 Pac. 113) ; *Tinsley* v. *Anderson,* 171 U. S. 101, 106 (18 Sup. Ct. 805) ; *King* v. *Mullins,* 171 U. S. 404 (18 Sup. Ct. 925) ; *Henry* v. *Hoboken,* 59 U. S. (18 How.), 272; *Brown* v. *New Jersey,* 175 U. S. 172 (20 Sup. Ct. 77) ; *Fallbrook Irrig. Dist.* v. *Bradley,* 164 U. S. 112 (17 Sup. Ct. 56).

The Portland Charter of 1898 does not contravene the Constitution of Oregon, article I, § 10, requiring that "every man shall have remedy by due course of law for injury done him in person, property or reputation": *Bailey* v. *Frush,* 5 Or. 136; *Leeper* v. *State of Texas,* 139 U. S. 462 (11 Sup. Ct. 577) ; *Maxwell* v. *Dow,* 176 U. S. 581, 603 (20 Sup. Ct. 449 and 494).

Neither does the charter violate the state constitution, article I, § 18, providing that "private property shall not be taken for public use   *   *   *   without just compensation," or article I, § 32, requiring that "all taxation must be equal and uniform": *King* v. *Portland,* 2 Or. 146, 151.

The charter does not contravene art. IX, § 1, of the state constitution: *King* v. *Portland,* 2 Or. 146; *Ladd* v. *Gambell,* 35 Or. 393 (59 Pac. 113) ; *City of East Portland* v. *Multnomah County,* 6 Or. 62; *Henderson Bridge Co.* v. *Kentucky,* 166 U. S. 150 (17 Sup. Ct. 532).

Mr. Justice Wolverton, after stating the facts, delivered the opinion of the court.

1. Several objections are interposed, directed against the legality of the assessment. The first is that the charter pro-

visions under which it was made do not provide for an apportionment of the burden under a uniform rule, such as is required by the constitution. There is much discussion in the books as to whether an assessment for local improvements is a tax or not, but, whatever may be the true doctrine, it must be conceded that the authority to make such an assessment is necessarily lodged in the taxing power. This has been held so often that the controversy must be regarded as closed: *Fallbrook Irrig. Dist.* v. *Bradley*, 164 U. S. 112, 176 (17 Sup. Ct. 56). Apportionment of the burden is, however, essential, though it need not be made upon property in proportion to its value. Mr. Cooley says: "But, whatever may be the basis of the taxation, the requirement that it shall be uniform is universal. It applies as much to these local assessments as to any other species of taxes. The difference is only in the character of the uniformity, and in the basis on which it is established": Cooley, Const. Lim. (6 ed.), 615. Mr. Justice EARL, in *Stuart* v. *Palmer*, 74 N. Y. 183 (30 Am. Rep. 289), states the proposition as follows: "It is not disputed that the legislature has unlimited power, except as restrained by the federal constitution, to impose taxes and assessments for public purposes. It may impose taxes upon all property within the state, and in such cases the owners are supposed to receive a compensation for the burdens thus imposed, in the protection and benefits of the government under which they live. It may impose taxes upon the local divisions of the state for the purposes of local government, and all the citizens residing in the locality must bear the burdens, as they all receive the benefits of the local government. It may cause or authorize local improvements to be made, and authorize the expense thereof to be assessed upon the land benefited thereby. But in all cases there must be apportionment of the burdens, either among all the property owners of the state, or of the local division of the state, or the property owners specially benefited by the im-

provements. In either case, if one is required to pay more than his share, he receives no corresponding benefit for the excess, and that may properly be styled extortion or confiscation. A tax or assessment upon property, arbitrarily imposed, without reference to some system of just apportionment, could not be upheld."

This brings us to the rule of apportionment, and in this connection may be considered the second objection, which is that the mode and manner of assessment for street improvements adopted and prescribed by the legislature through the city charter do not take into consideration the benefits, or limit or apportion the assessment by and in accordance with the benefits received, and therefore that the charter is in violation of the fifth and fourteenth amendments to the national constitution, which inhibit the taking of private property for public use, and without due process of law. Our state constitution has similar provisions (article I, §§ 10, 18), so that, if the rule is in violation of one, it is also in conflict with the other. The case has been presented, however, by the allegations of the complaint and at the argument, with special reference to the federal question; and we will treat it more particularly in that light, for, if the legislative act prescribing the manner and mode of assessment is void under the national constitution, within the doctrine of the supreme judicial court of the United States, then we are precluded, as it is the final arbiter in the premises. It is asserted with substantial unanimity and great clearness by the courts in this country, as well as by text writers of erudition and learning, that, unless the nature of the case precludes it, the power to determine the confines of a taxing district for any particular burden is purely one of legislative discretion, and that the question of benefits accruing by reason of improvements contemplated is regarded as one of fact, which the legislature is always presumed to have considered and settled by the enactment. Mr. Justice Finch, in *Spencer*

v. *Merchant,* 100 N. Y. 585 (3 N. E. 682),—a case involv-
ing the validity of an act whereby certain real property, sit-
uated in a prescribed district, which had not theretofore paid
an assessment for a local improvement under an act declared
to be void, was required to pay a sum of money then ascer-
tained,—says: "The act of 1881 (the one in question) de-
termines absolutely and conclusively the amount of tax to be
raised, and the property to be assessed, and upon which it is
to be apportioned. Each of these things was within the
power of the legislature, whose action cannot be reviewed in
the courts upon the ground that it acted unjustly or without
appropriate and adequate reason.  *  *  *  The legisla-
ture may commit the ascertainment of the sum to be raised
and of the benefited district to commissioners, but is not
bound to do so, and may settle both questions for itself; and
when it does so its action is necessarily conclusive and be-
yond review." This case went to the Supreme Court of the
United States *(Spencer* v. *Merchant,* 125 U. S. 345, 8 Sup.
Ct. 921), and the doctrine thus promulgated was there di-
rectly approved and affirmed, in the following language
(Mr. Justice GRAY, speaking for the court) : "In the absence
of any more specific constitutional restriction than the gen-
eral prohibition against taking property without due process
of law, the legislature of the state, having the power to fix
the sum necessary to be levied for the expense of a public
improvement, and to order it to be assessed, either, like other
taxes, upon property generally, or only upon the lands ben-
efited by the improvement, is authorized to determine both
the amount of the whole tax, and the class of lands which
will receive the benefit, and should therefore bear the burden,
although it may, if it sees fit, commit the ascertainment
of either or both of these facts to the judgment of the
commissioners."

So, in *Fallbrook Irrig. Dist.* v. *Bradley,* 164 U. S. 112,
176 (17 Sup. Ct. 56), the court say: "The legislature, when

it fixes the district itself, is supposed to have made proper. inquiry, and to have finally and conclusively determined the fact of benefits to the land included in the district, and the citizen has no constitutional right to any other or further hearing upon that question." In further support of the doctrine, see Cooley, Tax'n (2 ed.), 640; *King* v. *City of Portland,* 2 Or. 146; *Lent* v. *Tillson,* 140 U. S. 316 (11 Sup. Ct. 825); *Williams* v. *Eggleston,* 170 U. S. 304 (18 Sup. Ct. 617); *People* v. *Mayor, etc., of Brooklyn,* 4 N. Y. 419 (55 Am. Dec. 266); *Litchfield* v. *Vernon,* 41 N. Y. 123. As has been indicated by some of the foregoing references to the authorities, the legislature may, instead of fixing and prescribing the taxing district itself, refer the matter to commissioners or local boards or bodies for their ascertainment and determination; and in such case the substituted bodies possess and exercise legislative functions, and their action must be deemed as conclusive upon the subject as if the legislature had exercised the authority directly: Cooley, Tax'n (2 ed.), 640. The doctrine is laid down in *Williams* v. *Eggleston,* 170 U. S. 304 (18 Sup. Ct. 617), as follows: "Neither can it be doubted that, if the state constitution does not prohibit, the legislature, speaking generally, may create a new taxing district, determine what territory shall belong to such district, and what property shall be considered as benefited by a proposed improvement. And in so doing it is not compelled to give notice to the parties resident within the territory, or permit a hearing before itself, one of its committees, or any other tribunal, as to the question whether the property so included within the taxing district is in fact benefited." See, also, *Spencer* v. *Merchant,* 100 N. Y. 585 (3 N. E. 682); *Dickson* v. *City of Racine,* 61 Wis. 545 (21 N. W. 620).

2. The question of apportionment between the owners when the authority is delegated is quite a different thing. In such case the commissioners or body to which the duty is intrusted act quasi judicially, and there must be notice and

an opportunity to be heard before the owner can be finally precluded and his property subjected to the payment of the assessment: *Sears* v. *Street Commissioners,* 173 Mass. 350, 355 (53 N. E. 876), and authorities there cited. See, also, 2 Dillon, Mun. Corp. (4 ed.), § 802*a.*

3. The manner of notice and the specific period of time in the proceedings when he may be heard are not very material, so that reasonable opportunity is afforded before he has been deprived of his property, or the lien thereon is irrevocably fixed. So it has been held that it is sufficient if the party is accorded the right of appeal or to be heard upon an application for abatement (see *Towns* v. *Klamath County,* 33 Or. 225, 53 Pac. 604; *Weed* v. *City of Boston,* 172 Mass. 28, 51 N. E. 204, 42 L. R. A. 642), or the assessment is to be enforced by a suit to which he is to be made a party *(Hagar* v. *Reclamation Dist.,* 111 U. S. 701, 4 Sup. Ct. 663; *Walston* v. *Nevin,* 128 U. S. 578, 9 Sup. Ct. 192), or the right of injunction against collection is accorded, by which the validity of the assessment may be judicially determined *(McMillen* v. *Anderson,* 95 U. S. 37). In such case he cannot be heard to complain that his property is being taken without due process of law. The case of *Paulsen* v. *Portland,* 149 U. S. 30 (13 Sup. Ct. 750), covers the question of the right to notice and a hearing quite fully; and it is significant that special reference is made to the ten days' notice required to be given under section 104 of the charter as it then stood, after the assessment had gone upon the docket of city liens, and before collection can be proceeded with, which is almost the exact provision now contained in section 141. While the court at the time declined to decide that such a notice was sufficient, yet, if the cause had been dependent upon it alone, it is not altogether clear that it would have held it insufficient. So it was held by this court, in conformity with the prevailing rule, that, if provision is made for notice to and

38 OR.—27.

hearing of each proprietor at some stage of the proceeding upon the question of what proportion of the tax shall be assessed upon his land, there is not a taking without due process of law: *Wilson* v. *City of Salem,* 24 Or. 504 (34 Pac. 9, 691).

4. The principle upon which is based the authority to take money as a tax for public use is that the taxpayer receives, or is supposed to receive, a just remuneration, in the protection which the government affords to life, liberty, and property, and in the increase in the value of possessions which comes from the use to which the money raised by the tax is applied: Cooley, Const. Lim. (6 ed.), 613. Local or special assessments for local improvements stand upon a different basis. They are made and sustained upon the assumption that a prescribed portion of the community is to be especially benefited, in the enhancement of the value of the property peculiarly situated as regards the proposed expenditure of the funds to be raised by the assessment. It is but a demand of simple justice that special contributions in consideration of special benefits should be made by those receiving the benefits, but such contributions ought not, by the same demand of justice, to be enforced in any case beyond the benefits received: Cooley, Tax'n (2 ed.), 606. Such an assessment is not in conflict with the provision of our state constitution requiring that "all taxation shall be equal and uniform": Article I, § 32; *King* v. *City of Portland,* 2 Or. 146. It must be conceded, therefore, as was said by Mr. Justice HARLAN, in *Norwood* v. *Baker,* 172 U. S. 269, 279 (19 Sup. Ct. 187), that "the exaction from the owner of private property of the cost of a public improvement in substantial excess of the special benefits accruing to him is, to the extent of such excess, a taking, under the guise of taxation, of private property for public use, without compensation." The eminent jurist used the words "substantial excess" advisedly, because, as he explains, "exact equality in taxation is not al-

ways attainable, and for that reason the excess of cost over special benefits, unless it be of a material character, ought not to be regarded by a court of equity when its aid is invoked to restrain the enforcement of a special assessment."

Judicial authority, were it necessary, is not lacking elsewhere in support of the doctrine. "The whole theory of local taxation or assessment," say the Supreme Court of Missouri, in *McCormack* v. *Patchin,* 53 Mo. 33 (14 Am. Rep. 440), "is that the improvements for which they are levied afford a remuneration in the way of benefits. A law which would attempt to make one person or given number of persons, under the guise of local assessments, pay a general revenue for the public at large, would not be an exercise of the taxing power, but an act of confiscation." So, in *State* v. *Mayor, etc., of Hoboken,* 36 N. J. Law, 291, it was held that, to the extent of the excess of an assessment above benefits accruing by reason thereof, it was a taking of private property for public use without compensation, because that received by the owner was not equal to that taken from him. And again, in *Dexter* v. *Boston,* 176 Mass. 247 (79 Am. St. Rep. 306, 57 N. E. 379), decided in 1900, the court say : "It is now settled law in this court, as it is in the Supreme Court of the United States and in many other courts, that after the construction of a public improvement a local assessment for the cost of it cannot be laid upon real estate in substantial excess of the benefit received by the property. Such assessments must be founded on the benefits, and be proportional to the benefits," —citing the *Norwood Case,* and, among others, *Sears* v. *Street Commissioners,* 173 Mass. 350, 355 (53 N. E. 876), wherein the court say that "it is well established that taxation of this kind is permissible under the constitution of this commonwealth and under the Constitution of the United States only when founded upon special and peculiar benefits to the property from the expenditure on account of which the tax is laid, and then only to an amount not exceeding

such special and peculiar benefits." This marks the boundary, beyond which it is not within the power of the legislature to go, even in the determination of benefits as applied to a prescribed district. When, however, it is plainly and palpably manifest from the surroundings (that is, from the physical condition of the property involved, its locality, the character of the work or improvement, the assessment, and from the very nature of things) that such an assessment is not adapted to the purpose, and is requiring of the owner a contribution to which he should not be subjected in that capacity, the court will interfere to prevent a consummation of the injustice.

5. But we are more concerned with the manner of apportionment as between owners within the assessment district. In this, as in prescribing the district, the legislature has a discretion commensurate with the broad domain of legislative power: 2 Dillon, Mun. Corp. (4 ed.), § 761, subd. 4. The mode which the legislature has prescribed is, in substance, that the cost of the half street in front shall be assessed upon the abutting lot or part of lot, and that the cost of street intersections shall be assessed five-ninths upon the corner lot, and the remainder upon the adjacent lot in the quarter block. The rule is invariable, and, when the cost of the improvement in front or at an intersection is ascertained, it must be assessed upon the property; and no discretion, legislative or judicial, abides with the municipal authorities to modify or abate it in the slightest measure. The method is perhaps the least justifiable, as a general rule, of any that has been devised, but that does not signify that it is not proper in any case. The *Norwood Case* would seem, at first thought, to forbid the application under all conditions of the front-foot rule, but it was probably not intended that it should be so far-reaching in its significance. As applied to that case, and all similar cases, it must be accepted as controlling. The rule has been many times upheld, and it is believed it yet

may be, where the conditions are such that it may reasonably be supposed that the method adopted will secure a proportional distribution of the burden according to the benefits. Thus, in *Sears* v. *Board of Aldermen,* 173 Mass. 71 (53 N. E. 138, 43 L. R. A. 834), an assessment for sprinkling a street was sustained by the rule, because it did not appear that, as applied to the property assessed, it was not an approximately accurate method of determining benefits. In the opinion the proposition is stated that, "while these assessments must be founded upon benefits, the courts have generally recognized the difficulty, and in many cases the impracticability, of attempting to estimate benefits to estates one by one without some rule or principle of general application which will make the assessments reasonable and proportional, according to the benefits. Accordingly the determination of such a rule or principle by the legislature itself, or by the tribunal appointed by the legislature to make the assessments, has commonly been upheld by the courts. If, however, its effect plainly is to make an assessment upon any estate substantially in excess of the benefit received, it is set aside." This case was decided March 3, 1899, since the announcement of the *Norwood Case.* In the September prior, the same court decided the case of *Weed* v. *City of Boston,* 172 Mass. 28 (51 N. E. 204, 42 L. R. A. 642), wherein it was held that assessments according to frontage of lots on a strip of private land taken for a sewer may be so grossly disproportionate to the benefits received by the land from the sewer that a statute authorizing them is unconstitutional. The court say: "The weight of authority is that an assessment according to the frontage of lots abutting upon a street or a public way in a city sometimes may be a reasonable mode of making an assessment for the cost of constructing a sewer in such street or way, because of the similarity of the lots, but that such an assessment when the sewer is not constructed in a street or way, or is constructed in the country,

where the lots abutting are not laid out as building lots, often would be unreasonable." In the May following the announcement of the case of *Sears* v. *Board of Aldermen*, 173 Mass. 71 (53 N. E. 138, 43 L. R. A. 834), another case was decided, entitled *Sears* v. *Street Commissioners*, 173 Mass. 350 (53 N. E. 876), whereby it was held that an act purporting to give the street commissioners power to levy a local assessment for a burden that was clearly general in its character, and that ought to be borne by the state at large, was invalid. And a year later the decision of *Dexter* v. *City of Boston*, 176 Mass. 247 (79 Am. St. Rep. 306, 57 N. E. 380), was handed down which holds that the rule is vicious as applied to the construction of a sewer which, by reason of its turning at right angles upon plaintiff's lot, imposed a double burden (being assessed upon the two sides) as compared with other lots. The rule was applied by the common council and upheld in *Wilson* v. *City of Salem*, 24 Or. 504 (34 Pac. 9, 691), upon the ground that the legislative judgment of the council had settled the matter as being an appropriate measure of benefits in that case.

The only basis upon which any devised method can be sustained is that it is reasonably calculated to the promotion of a substantial proportional distribution of the burden according to benefits. Mr. Dillon says: "The legislature has, within legislative limits, a discretion in providing the mode of ascertaining the benefits; but, even in the absence of express constitutional restriction, its power is not unlimited. This ascertainment may be made, and usually is, by a separate and actual estimate of special benefits. But where the lots in a town or city are small, of the same depth, and similarly situated, an ascertainment, under the conditions mentioned in a previous section, may be authorized on the basis of frontage, which is a convenient substitute for an actual estimate; but this mode cannot be authorized where it must inevitably operate with manifest inequality, as will

often be the case with rural or suburban property, or where, from the circumstances, it is clear that it is legally impossible that an apportionment of the cost on this basis can be just or equal, or approximately so, and where injustice must certainly result from its adoption. The same general principle applies to an assessment upon the basis of superficial area; and therefore where an assessment in this mode was authorized to be made, and was made equally upon lands remote from the sewer and only slightly benefited, with no provision securing the right to connect with it, and upon lots fronting on the sewer and greatly benefited, the court considered the mode so arbitrary, so certain to work injustice, so flagrantly opposed to the principle of contribution in proportion to benefits, as to be unconstitutional": 2 Dillon, Mun. Corp. (4 ed.), § 989. So, it was held upon like principle by this court that an assessment for a local improvement upon property not at all benefited, although within the taxing district, would be annulled, as it would amount to a taking without due process of law: *Oregon & Cal. R. R. Co.* v. *City of Portland,* 25 Or. 229 (35 Pac. 452, 22 L. R. A. 713, 46 Am. & Eng. Corp. Cas. 295).

The same idea pervades the judicial utterances of the Supreme Court of the United States. *Parsons* v. *District of Columbia,* 170 U. S. 45 (18 Sup. Ct. 521), is a case wherein congress by legislative enactment provided for a comprehensive system of water supply in the District of Columbia, through street mains, and that the assessment for such purpose should be levied upon abutting lots or property at the rate of $1.25 per foot front. It was objected that the system adopted did not afford the owner an opportunity to be heard upon the question of costs, benefits, or apportionment, and that the assessment was not made upon the basis of benefits to the property assessed; but the court held (Mr. Justice SHIRAS announcing the opinion) that none of the objections were well taken. "Our conclusion," it was said, "is that it

was competent for congress to create a general system to store water and furnish it to the inhabitants of the District, and to prescribe the amount of the assessment and the method of its collection, and that the plaintiff in error cannot be heard to complain that he was not notified of the creation of such a system, or consulted as to the probable cost thereof. He is presumed to have notice of these general laws regulating such matters. The power conferred upon the commissioners was not to make assessments upon abutting properties, nor to give notice to the property owners of such assessments, but to determine the question of the propriety and necessity of laying water mains and water pipes, and of erecting fire plugs and hydrants, and their *bona fide* exercise of such a power cannot be reviewed by the courts." The opinion quotes from 2 Dillon, Mun. Corp (4 ed.), § 752, as follows: "Whether the expense of making such improvements shall be paid out of the general treasury, or be assessed upon the abutting property, or other property specially benefited, and, if in the latter mode, whether the assessment shall be upon all property found to be benefited, or alone upon the abutters, according to frontage or according to the area of their lots, is, according to the present weight of authority, considered to be a question of legislative expediency." The *Norwood Case* distinguishes this by the significant observation that "there is no such disproportion between the amount assessed and the actual cost as to show any abuse of legislative power." In *Bauman* v. *Ross,* 167 U. S. 548 (17 Sup. Ct. 966), decided in 1896, it was said: "The rule of apportionment among the parcels of land benefited also rests within the discretion of the legislature, and may be directed to be in proportion to the position, the frontage, the area, or the market value of the lands, or in proportion to the benefits as estimated by commissioners." See, also, *Mattingly* v. *District of Columbia,* 97 U. S. 687.

*Walston* v. *Nevin,* 128 U. S. 578 (9 Sup. Ct. 192), is

very similar, as respects the matters in controversy, to the
case at bar.   The statute prescribing the manner of making
assessments is as follows: "When the improvement is the
original construction of any street," etc., "such improvement
shall be made at the exclusive cost of the owners of lots in
each fourth of a square, to be equally apportioned by the
general council according to the number of the square feet
owned by them respectively, except that corner lots  *  *  *
shall pay twenty-five per cent. more than others for such
improvements.   Each subdivision of territory bounded on
all sides by principal streets shall be deemed a square."   An
assessment made in pursuance of the statute was attacked
as in conflict with the fourteenth amendment of the national
constitution, but it was upheld, the court saying:   "The
statute has been repeatedly before the Kentucky court of
appeals, which has sustained it as constitutional and proper
legislation; the powers vested thereby in the local govern-
ment being subjected to the supervision of the courts, where
the particular facts in each case can be examined, and the
controversy determined by those rules and principles which
have always governed courts in dealing with questions of
assessment and taxation,"—citing *Preston* v. *Roberts,* 12
Bush, 570; *Beck* v. *Obst,* 12 Bush, 268; *Baptist Church* v.
*McAtee,* 8 Bush, 508 (8 Am. Rep. 480).   Further on in the
opinion the court cites *Davidson* v. *City of New Orleans,*
96 U. S. 97.   After quoting from the opinion of Mr. Jus-
tice MILLER, it draws the conclusion therefrom "that neither
the corporate agency by which the work is done, the exces-
sive price which the statute allows therefor, nor the relative
importance of the work to the value of the land assessed,
nor the fact that the assessment is made before the work is
done, nor that the assessment is unequal as regards the ben-
efits conferred, nor that personal judgments are rendered
for the amount assessed, are matters in which the state au-
thorities are controlled by the federal constitution.   So, the

determination of the taxing district and the manner of the apportionment are all within the legislative power. * * * And, whenever the law operates alike on all persons and property similarly situated, equal protection cannot be said to be denied."

The same principle is maintained in the case of *In re Washington Avenue*, 69 Pa. St. 352, where it was held (Mr. Justice AGNEW rendering the opinion) that it was incompetent for the legislature to create a district mainly in rural domain for the construction of an artificial road seven miles long, the expense to be paid by assessments upon lands within the district. It was apparent from the very nature of things that the road was a general public benefit, for which a local assessment could not be maintained, and in this respect was like the case of *Sears* v. *Street Commissioners*, 173 Mass. 350 (53 N. E. 876). In the course of the opinion it was said: "Taxation, according to the benefits received, is neither unequal nor unjust, and cannot, therefore, come into conflict with those clauses in the bill of rights which regard as sacred the right of private property. So long, therefore, as a law faithfully and reasonably provides for a just assessment according to the benefits conferred, and does not impose unfair and unequal burdens, it cannot be said to exceed the legislative power of taxation, when exercised for proper objects. It is on this ground only that assessment according to the frontage of property on a public street to pay for its opening, grading, and paving is to be justified. As a practical result, in cities and large towns, the per foot front mode of assessment reaches a just and equal apportionment in most cases. Hence this mode has been deemed a reasonable exercise of the taxing power in such places, with a view to taxation according to the benefits received. Whatever doubt might have been originally entertained of it as a substitute (which it really is) for actual assessment by jurors or assessors under oath, it has been so often sanctioned by de-

cision, it would ill become us now to unsettle its foundation by disputing its principle. But it is an admitted substitute, only because practically it arrives, as nearly as human judgment can ordinarily reach, at a reasonable and just apportionment of the benefits on the abutting properties. Hence the fairness of the rule of charging benefits by frontage was a conceded point in *Hammett* v. *City of Philadelphia*, 65 Pa. St. 155 (3 Am. Rep. 615). But this rule, as a practical adjustment of proportional benefits, can apply only to cities and large towns, when the density of population along the street, and the small size of lots, make it a reasonably certain mode of arriving at a true result." See, also, *Cleveland* v. *Tripp*, 13 R. I. 50; *Raleigh* v. *Peace*, 110 N. C. 32 (14 S. E. 521, 17 L. R. A. 330) ; *Allen* v. *City of Davenport*, 107 Iowa, 90 (77 N. W. 532).

Since the decision of the *Norwood Case,* assessments by the front-foot rule have been sustained in several of the states of the Union. In the case of *Cass Farm Co.* v. *City of Detroit,*\* 124 Mich. — (83 N. W. 108), which involved a street pavement, in the course of the opinion the court quotes from Mr. Justice COOLEY in *Sheley* v. *City of Detroit,* 45 Mich. 431 (8 N. W. 52), as follows : "We might fill pages with the names of cases decided in other states which have sustained assessments for improving streets, though the apportionment of cost was made on the same basis as the one before us. If anything can be regarded as settled in municipal law in this country, the power of the legislature to permit such assessments, and to direct an apportionment of the cost by frontage, should by this time be considered as no longer open to controversy. Writers on constitutional law, municipal law, and on the law of taxation have collected the cases, and have recognized the principle as settled; and, if the question were new in this state, we might think it im-.

---

\*NOTE.—This decision has been affirmed on appeal by the Supreme Court of the United States, 181 U. S. —— (21 Sup. Ct. 644).—REPORTER.

portant to refer to what they say. But the question is not new. It was settled for us thirty years ago." But the court distinguished the case from that of *Norwood* v. *Baker* on the ground that it was for paving a street, while that was for street-opening purposes, and refused to disturb the rule that had been so long followed in the state. In Indiana it was sustained in *Adams* v. *City of Shelbyville,* 154 Ind. 467 (77 Am. St. Rep. 484, 57 N. E. 114). The case involved a stone curbing, where what is known as the "Barrett Law" was upheld. The rule was also sustained in North Dakota in *Webster* v. *City of Fargo,* 9 N. Dak. 208† (82 N. W. 732), an assessment for street paving; in Minnesota, in *State* v. *District Court,* 80 Minn. 293 (83 N. W. 183), also for street paving; in Missouri, in *Heman* v. *Allen,* 156 Mo. 534‡ (57 S. W. 559), and *Barber Asphalt Paving Co.* v. *French,* 158 Mo. 534§ (58 S. W. 934), the former of which involved a sewer assessment, and the latter the pavement of a street; in New York, by the court of appeals, in *Conde* v. *City of Schnectady,* 164 N. Y. 258 (58 N. E. 130), a street-paving case; and in California, in *Hadley* v. *Dague,* 130 Cal. 207 (62 Pac. 500), for street improvement. Texas has condemned the rule unqualifiedly in *Hutcheson* v. *Storrie,* 92 Tex. 685 (51 S. W. 848, 45 L. R. A. 289, 71 Am. St. Rep. 884), and the federal circuit courts are uniform in their holding to the same purpose: *Fay* v. *City of Springfield,* 94 Fed. 409; *Loeb* v. *Trustees,* 91 Fed. 37; *Charles* v. *City of Marion,* 98 Fed. 166; *Cowley* v. *City of Spokane,* 99 Fed. 840; *Charles* v. *City of Marion,* 100 Fed. 538.

---

†NOTE.—The Supreme Court of the United States has affirmed this decision, 181 U. S. —— (21 Sup. Ct. 623).—REPORTER.

‡NOTE.—On appeal to the Supreme Court of the United States this decision was affirmed under the title of *Shumate* v. *Heman,* 181 U. S. —— (21 Sup. Ct. 645).—REPORTER.

§NOTE.—See the decision of the Supreme Court of the United States in this case on appeal, 181 U. S. 324 (21 Sup. Ct. 625, 642), affirming the lower court, and explaining the case of *Norwood* v. *Baker,* 172 U. S. 269. Read, also, *Wight* v. *Davidson,* 181 U. S. 371 (21 Sup. Ct. 616).
—REPORTER.

But we are inclined to believe that the better doctrine deducible from adjudged cases, including those of the Supreme Court of the United States, is that the assessment will be upheld wherever it is not patent and obvious from the nature and location of the property involved, the district prescribed, the condition and character of the improvement, the cost and relative value of the property to the assessment, that the plan or method adopted has resulted in imposing a burden in substantial excess of the benefits, or disproportionate within the district as between owners. This must be · so, logically and necessarily, in view of the broad latitude accorded the legislature, in its discretion, to prescribe the taxing district, and the manner and method of making the assessment within the district, as it concerns individual owners and proprietors. As the writers say, the authority of the legislature in these respects is almost without limit; yet that there is a limit beyond which it cannot go, all will concede. When, however, it has exercised its legislative discretion, and prescribed a district and adopted a method, it ought to be plain and indisputable that it has exceeded its constitutional authority, before the court should undertake to set at naught its declared will. Neither ought the system to be condemned because there may be exceptions wherein it would work a legal injury to enforce it. If such an exception arises, as was the case in *Oregon & Cal. R. R. Co.* v. *City of Portland,* 25 Or. 229 (35 Pac. 452, 22 L. R. A. 713, 46 Am. & Eng. Corp. Cas. 295), the court will not enforce it, but it will hesitate long to condemn the rule because of the exception. The rule upon which the assessment is made in the present case has been upheld in several jurisdictions: *Warren* v. *Henly,* 31 Iowa, 31; *Gatch* v. *City of Des Moines,* 63 Iowa, 718 (18 N. W. 310); *Sands* v. *City of Richmond,* 31 Grat. 571 (31 Am. Rep. 742); *White* v. *People,* 94 Ill. 604. Upon this subject Mr. Dillon observes: "It may be true that in some instances more hardship will be occa-

sioned by requiring each owner to make or pay for the improvement in front of his own property than if the cost were assessed on the basis of frontage or of supposed benefits received. Still it seems to the author difficult to find satisfactory and solid ground on which to discriminate the cases so as to hold that one is within the constitutional power of the legislature, and the other is not": 2 Dillon, Mun. Corp. (4 ed.), § 753.

6. Now, let us look at the law, and ascertain, if we can, whether it is legally sustainable upon principle. The common council is empowered by the legislature to fix and determine the taxing district. This it did by adopting the resolution of intention to make the improvement. Its action in this regard is legislative in character, and it was not requisite that the legislature should have provided for notice before the council was authorized to act. In prescribing the district, it must be presumed, as would have been the case if the legislature had itself acted directly, that it took into consideration the exceptional benefits that would accrue to the property which it was intended should be charged with the burden, because it could inaugurate or make such an assessment upon no other basis. A notice in the present instance was required by the charter, and given, however, and, while it was for the purpose of acquiring jurisdiction, it gave the property holders an opportunity to appear and file objections to the improvement; and it was perfectly competent for them to raise both the objection that as a district the costs would be in excess of the exceptional benefits to the property involved, and that as it respects individual holders, and between themselves, the assessment would not be proportional to the relative benefits to be derived from the improvement. This is what, in fact, was done by the plaintiffs, as shown by the record, and upon this issue they were accorded a hearing. It was also possible for the common council to determine the matter with reasonable accuracy, as the probable cost and

distributive share thereof among the holders was known to them, as was also the locality and situation of the property to be assessed. The manner adopted for the assessment of the costs and expenses against the respective lots is wholly legislative in its nature. The common council is accorded no discretion, but is to make the assessment as directed by the charter. Its function in that respect is clerical, merely, as no choice is lodged with it to vary the rule adopted. Such being the nature of the assessment, no notice or hearing would seem to be requisite under *Parsons* v. *District of Columbia*, 170 U. S. 45 (18 Sup. Ct. 521). But the charter afforded an opportunity to be heard sufficient under other authorities to support the assessment. There are four several notices required along the way: First, of the proposed improvement; second, inviting proposals for doing the work; third, touching the acceptance of the work; fourth, ten days' notice of the entry of the assessment in the docket of city liens. Ample opportunity was thus afforded the owners to appear and interpose the constitutional objections, which is all that is sought to be done in this proceeding.

7. The improvement consists of an elevated roadway, ranging from ten to fifteen feet in height throughout, except at one intersection, which was a fill; and it is apparent that the cost of the work was practically uniform throughout, and the assessment against the lots was therefore as nearly proportional according to benefits as could be devised. At least, it is not apparent that there is any substantial excess of costs above benefits, nor is there such a disproportionate distribution of the burden as to justify the court in declaring the assessment an arbitrary exaction by the legislature. It is beyond the power of human ingenuity to adopt any plan or mode of assessment that will operate to produce exact uniformity, and all that may be expected is a reasonable approximation to such a standard, and the rule adopted under the charter fulfills that condition as applied to the present con-

troversy. There is no doubt that the property was benefited in excess of the costs and expenses. These considerations affirm the decree of the court below, and sustain as valid the assessment involved by the proceeding.

We have arrived at this conclusion not without some misgivings. But, in view of the fact that the manner of the assessment, as here found to exist, has been followed substantially in its present form since 1864 (see published charter of the City of Portland of 1872); that many miles of street improvements, in various forms, have been made and constructed in pursuance of it; that hundreds of thousands of dollars have been expended under the rule; that numerous titles are depending upon it, and to that extent it has become a rule of property; that tax bills issued in pursuance of it are bought and sold in the market upon the faith of it; that many bonds are outstanding, depending for their validity upon its legality; and that it has time and time again been before the courts of the state and sustained, although not upon the exact point here involved (which was never mooted until after the decision in the *Norwood Case*),—we deem it unwise at this late date to disturb it and set the whole matter at large, as if there had never been a law upon the subject, thus unsettling the financial autonomy of the city government, and perhaps many titles within its domain. It would be far better that the legislature should change the procedure, than that we should nullify it *ab initio*, with a long train of evils certain to follow in its wake; and to that source of power resort should be had, if an evil exists, for its reparation. Where a law is clearly without the pale of the constitution, state or national, the courts will not hesitate to declare it void; but, unless it so appears, or where a reasonable doubt exists, it should be resolved in favor of upholding the will of the legislature, which department of the government is as much bound by the letter of the constitution as the judiciary, and is always presumed to have acted within its authority.          AFFIRMED.