CHARLES H. BROWN & others *vs.* MAYOR & ALDERMEN OF FITCHBURG.

Worcester. Oct. 1, 2, 1879. — Feb. 25, 1880. ENDICOTT & LORD, JJ., absent.

The mayor and aldermen of a city have no authority, under the Gen. Sts. *c.* 48, or the St. of 1869, *c.* 111, to include in the assessment of the cost of a sewer in one street a part of the cost of a sewer in another street, with which it connects, built several years before, and for the cost of which, at the time of its construction, no assessment was made upon the owners of estates benefited thereby; and an assessment so made may be quashed upon a writ of *certiorari.*

SOULE, J. The petitioners ask for a writ of *certiorari* in order that the record of the mayor and aldermen of the city of Fitchburg in the matter of the assessment of the cost of a sewer in Willow and Green Streets in that city may be quashed. Numerous errors are alleged as reasons why the writ should issue. It is unnecessary for us to pass upon them all. We are satisfied that, whether that part of the sewer which is in Green Street was legally established or not, the assessment was illegal. In making it, a substantial amount, being part of the cost of what is termed by the respondents the outlet of the sewer, was included as a part of the cost of the Willow and Green Street sewer. This outlet was constructed by the selectmen of the town of Fitchburg, and accepted by the town in the year 1872, at a cost, including the land damages, of more than $15,000. The respondents contend that it was constructed as a part of a system of sewers adopted by the town of Fitchburg in 1869, and as the common outlet for all sewers which should thereafter be constructed within certain limits known as the Willow Street District: and that, therefore, a proportional part of its cost was

properly included in the assessment to pay for the Willow and Green Street sewer, which lies within those limits.

In determining the question, it is unnecessary to consider whether the town of Fitchburg had authority in 1869 to adopt a plan for a comprehensive system of sewers, which should be constructed one after another at greater or less intervals of time, and requiring several years for the completion of the system ; because, in the absence of special legislation governing the case, any assessment for paying the cost of any sewer, constructed by either the town or the city, could be legally made only in accordance with the provisions of the Gen. Sts. *c.* 48, as extended and modified by the St. of 1869, *c.* 111. If, therefore, the town or city wished to assess the persons whose estates were in any way benefited, within the meaning of the statutes, by the construction of the sewer leading from Summer Street to the river, and which the respondents term " the outlet," they could have done it by having the selectmen, or the mayor and aldermen, within a proper time after the sewer was established, ascertain, assess and certify the proportional part of the charge of making that sewer, to be paid by each of the persons receiving benefit, and notify the persons to be charged. An assessment thus made, identifying the sewer by description or name, would have been in accordance with the terms of the statute, and any person aggrieved by it could, within three months after receiving notice of it, have applied for a jury, as the statute provides. In making the assessment, the municipal authorities would have been authorized to include in it, not only those persons whose estates were actually connected at the time, by public or private drains, with the sewer, but all those whose estates might be drained by means of it ; so that, if it was a part of a comprehensive system, and intended to be the common outlet for all sewers thereafter to be built within certain limits including the region in which the Willow and Green Street sewer now is, and was adapted to benefit all the estates in that region, the assessment might properly have covered all those estates. *Downer* v. *Boston,* 7 Cush. 277. *French* v. *Lowell,* 117 Mass. 363.

Instead of pursuing the course marked out by the statutes, the mayor and aldermen made no attempt to assess for the cost of the Summer Street sewer or " outlet," and therefore never

determined what estates were benefited by it, nor what propor-
tion of the cost of construction should be paid by the owners of
estates benefited, but arbitrarily, and without any legal warrant
therefor, included a part of its cost in the amount of the assess-
ment laid ostensibly for payment of the cost of the Willow and
Green Street sewer.   This renders the whole assessment illegal
and void, and the petitioners are entitled to a writ of certiorari
to bring the record up to this court, in order that it may be
quashed.                                   *Writ of certiorari to issue.*

*W. S. B. Hopkins & E. P. Loring*, for the petitioners.
*W P. Goulding & H. C. Hartwell*, for the respondents.