FREDERICK F. AYER & others, trustees, *vs.* MAYOR AND
ALDERMEN OF SOMERVILLE.

Suffolk. Nov. 10, 1886. — Feb. 24, 1887. HOLMES & GARDNER, JJ.,
absent.

Under the Pub. Sts. *c.* 50, § 4, where a common sewer is intended not only to serve
as an outlet or means of discharge for other common sewers, but also to benefit
the lands abutting upon it, no part of the cost need be assessed upon the owners
of lands along the line of the tributary sewers.

PETITION, by the trustees of the estate of James C. Ayer,
deceased, owners of land abutting on Cedar Street and Morrison
Street in Somerville, for a writ of certiorari to quash the pro-
ceedings of the mayor and aldermen of Somerville. in assessing
a proportionate part of the cost of a sewer in those streets upon
the lands of the petitioners, on the ground that the residents
and abutters on Clyde Street and Murdock Street were not
included in the assessment for the cost of the sewer on Cedar
Street and Morrison Street.

Hearing before *Gardner*, J., who reserved the case, on the
petition, and the answer and return of the respondents, for
the consideration of the full court. The facts appear 'in the
opinion.

*L. H. Babcock*, for the petitioners.

*S. C. Darling*, for the respondents.

C. ALLEN, J. The principal reason assigned by the petition-
ers for quashing the assessment is, that the persons benefited
by the Clyde Street sewer and the Murdock Street sewer were
not assessed for any part of the cost of the sewer in Cedar
Street and Morrison Street. The board of mayor and aldermen
treated each of these as separate common sewers, and made
separate assessments for the cost of each, including therein only
the abutting owners on the line of each sewer.

The petitioners do not, indeed, contend that it was erroneous
to treat these as separate common sewers. There is no statu-
tory definition of what, in respect to length or position, shall
constitute a distinct common sewer; but it is obvious that the
statutes do not contemplate that connecting sewers, forming a
continuous line, shall always be deemed to be a single common

sewer. In the present case, it is sufficient to say that the municipal authorities divided the sewers in the manner above mentioned; that the petitioners raise no question that this was a proper mode of proceeding; and that we see no occasion to question its propriety.

But the petitioners contend that the sewer in Cedar Street and Morrison Street was a discharging sewer for those in Clyde Street and Murdock Street; and that, as such, the charge of making it must be assessed proportionally upon those who receive benefit from those sewers, by virtue of the provisions of the Pub. Sts. c. 50, § 4, which are as follows : " Every person who enters his particular drain into such main drain or common sewer, or who, by more remote means, receives benefit thereby for draining his cellar or land, shall pay to the city or town a proportional part of the charge of making and repairing the same, and of the charge, not already assessed, of making and repairing other main drains and common sewers through which the same discharges, to be ascertained, assessed, and certified by the mayor and aldermen or selectmen ; and notice thereof shall be given to the party to be charged, or to his tenant or lessee." This presents the question, what is the meaning of the words " and of the charge, not already assessed, of making and repairing other main drains and common sewers through which the same discharges."

In determining this question, some light is obtained from looking at the history of the recent legislation upon the subject. The basis of the existing statute is found in the St. of 1841, c. 115, which provided, in § 2, that every person who might thereafter enter his particular drain into any main drain or common sewer, constructed by the municipal authorities, or who by any more remote means should receive any benefit thereby for draining his cellar or land, should pay to the town or city a proportional part of the charge of making and repairing such main drain or common sewer, to be ascertained and assessed by the municipal authorities. Section 5 provides that towns and cities might be charged with a part of the expense of such drains or sewers. In *Wright* v. *Boston*, 9 Cush. 233, 239, it was said that " the proportion intended by the statute is the proportion among the lots; and a tax laid upon them is to be made in

proportion to their value." The above sections were in substance reënacted in the Gen. Sts. *c.* 48, §§ 4, 7. Then followed the St. of 1878, *c.* 232, § 1, by which the Gen. Sts. *c.* 48, § 4, were amended, by inserting the words above quoted, upon which the question in the present case arises, requiring every person who enters his particular drain into the common sewer, or who by more remote means receives benefit thereby for draining his cellar or land, not only to pay to the city or town a proportional part of the charge of making and repairing the same, but also " of the charge, not already assessed, of making and repairing other main drains and common sewers through which the same discharges." The Gen. Sts. *c.* 48, § 4, as thus amended, were reënacted in the Pub. Sts. *c.* 50, § 4, and the provision for charging a part of the expense upon the city or town is contained in § 11.

In view of the great extent and complexity of the systems of sewerage which, in 1878, had become usual in various cities and towns of this Commonwealth, by which many tributary common sewers entered and were discharged through other and successive common sewers, until the final outlet was reached, it would obviously lead to great practical inconvenience, and often to unjust results, to make it imperative upon every city or town, in all cases, whenever a common sewer should be built or repaired, to assess such part of the charge or cost thereof as should not be assumed by the public, proportionally upon all the abutting owners along the lines of all tributary common sewers, near or remote, in proportion to the value of their lots. While, in some cases, it might be just and reasonable to require owners of lands upon an upper or tributary sewer to contribute something towards the cost of making and maintaining a lower sewer, used as a means of discharge for the upper one, yet, in laying down a rule of universal application, it is apparent that such a requirement would lead to consequences which it can hardly be supposed that the Legislature intended; especially when it is borne in mind that ample provision is made for assessing upon the city or town at large any part of the expense. It would put an undue burden upon the owners of the remoter lots, and tend to discourage enterprise and improvements. The practical objections to such a construction are so great, that it seems

to us that the Legislature must have intended that a much more limited scope should be given to these additional words. It is not necessary at this time to determine whether the words "other main drains and common sewers through which the same discharges" should be held to include only such other drains and sewers as, directly and without any intermediate connection, receive the discharge from the sewer upon the line of which the person to be assessed might own land. But we are brought to the conclusion that the other drains and sewers referred to are such as are used merely as an outlet or means of discharge; and that where, as in the present case, a common sewer is intended also as a benefit to the abutting lands, no part of the cost of it need be assessed upon the owners of lands along the line of tributary sewers.

The petitioners contend that the municipal authorities have declared by their records that the common sewer through Cedar Street and Morrison Street was intended as an outlet for those on Murdock Street and Clyde Street; and that they cannot now be allowed to contradict their own records and assert the contrary. It is no doubt true that it was intended to serve a purpose as an outlet for the upper sewers, but we find nothing to show that such was its sole purpose; and it does not follow, and indeed the petitioners do not aver, that the lands on Cedar Street and Morrison Street would not be benefited by its construction. From an inspection of the record of the case, it is obvious that the lower sewer was designed, not only to serve as a discharge for the upper sewers, but also to benefit the owners abutting upon the streets through which it is laid.

*Petition dismissed.*