OTIS H. WEED vs. MAYOR AND ALDERMEN OF BOSTON & another.

Suffolk. March 10, 1898. — September 16, 1898.

Present: FIELD, C. J., HOLMES, KNOWLTON, MORTON, & LATHROP, JJ.

*Certiorari — Practice — Constitutional Law — Sewer Assessments — Statute.*

Where a case is set down for hearing on a petition for a writ of certiorari to quash a sewer assessment and on the answer, all material facts well alleged in the answer and all material facts well alleged in the petition which are not denied or put in issue by the answer, if these facts are consistent with the record of the respondent, must be taken to be true.

Certiorari is a proper remedy to try the question whether assessments made under St. 1892, c. 402, entitled "An Act relating to sewers in the city of Boston," are invalid for any reason disclosed by the record, or because of the unconstitutionality of the statute.

Where, under St. 1892, c. 402, entitled "An Act relating to sewers in the city of Boston," a sewer has been laid out in a strip of land which, though called a street, is not a street but is private property, as are the lots of land bordering thereon, the method of laying assessments on such lots prescribed by the statute is unreasonable and disproportionate; and the statute in this respect is unconstitutional.

PETITION, filed January 12, 1895, for a writ of certiorari, to quash certain sewer assessments made under St. 1892, c. 402, entitled "An Act relating to sewers in the city of Boston." Hearing before *Morton,* J., who reported the case for the consideration of the full court upon two questions which are stated in the opinion. If either of them should be answered in the negative, the petition was to be dismissed; if both should be answered in the affirmative, the writ was to issue.

*J. W. Pickering,* for the petitioner, submitted the case on a brief.

*T. M. Babson,* for the respondents.

FIELD, C. J. As the case was heard upon the petition and answer, all material facts well alleged in the answer, and all material facts well alleged in the petition which are not denied or put in issue by the answer, and are consistent with the record of the respondents, must be taken to be true. This is in accordance with the practice which has been adopted in proceedings

like the present, when the case is set down for hearing on petition and answer. *Collins* v. *Holyoke*, 146 Mass. 298. The case has been reserved upon the following questions: "1. Whether certiorari is the proper remedy? 2. Whether the assessment is invalid in law for any reason disclosed by the entire record, or by reason of the unconstitutionality of chapter 402, Acts of 1892?" Certiorari undoubtedly is a proper remedy to try the question whether the assessments are invalid for any reason disclosed by the record, or because of the unconstitutionality of the statute. *Bowditch* v. *Boston*, 168 Mass. 239. *Holt* v. *Somerville*, 127 Mass. 408. *Boston* v. *Boston & Albany Railroad*, 170 Mass. 95.

The report recites as follows: " The respondents did not appeal to the discretion of the court, but admitted that the nature and purpose of the sewer, and the manifest injustice and hardship of the assessments, were such that the writ ought to issue if certiorari was the proper remedy and the act was unconstitutional, or the entire record disclosed such error in law as to warrant the issuing of the writ." The answer of the respondents is not so full and definite as it should have been. It does not contain a statement of the amount of expenses incurred in the construction of the sewer. A schedule of the number of the lots, of the number of feet assessed in each lot, and of the amount of the assessments with reference to each lot, is annexed to the answer. It is impossible to make out from this schedule in what manner the assessments were made. The papers do not disclose whether the expense of constructing the sewer exceeded four dollars for each lineal foot of it or not. In the schedule the amount assessed is sometimes a little more and sometimes a little less than two dollars per lineal foot of the side of the lot assessed nearest to the sewer. The averments of the petition in this respect are as follows: " 3. Your petitioner is ignorant as to the actual cost of said sewer, and as to the details of the expenses incurred for the work so ordered and performed as aforesaid, and has no means of ascertaining the same. But the said city of Boston and its said superintendent of streets claimed and claim and insist that the said expenses amounted to four dollars, or more than four dollars, for each lineal foot of said sewer, and that the said expenses, to the amount of four dollars for each

lineal foot of said sewer, constitute by force and by virtue of chapter 402 of the Acts of the year eighteen hundred and ninety-two the assessable cost of said work to be repaid to said city by the owners of the several parcels of land bordering on the strip of land in which said sewer is made. 4. The said superintendent of streets has made or attempted to make an apportionment of the said alleged assessable cost to certain parcels of land claimed and alleged by him to be the several parcels of land bordering on the strip of land in which said sewer is made, and has given notice thereof to your petitioner so far as the same relates to the several parcels of land owned by your petitioner, as hereinafter set forth; but your petitioner has no means of knowing or ascertaining whether the said apportionment is just and true and in accordance with said act, or otherwise." The averments of the answer in this respect are as follows: "Now come the respondents, and for answer to the plaintiff's petition say that they admit a sewer was constructed in Railroad Street, and the cost thereof assessed upon the estates benefited thereby, including certain land of the petitioner, as alleged in said petition," etc.

In view, however, of the argument addressed to us, the want of a sufficiently definite answer is not very material, because it is not contended in argument that the assessments have not been made in literal compliance with the terms of the statute. The hardship of the case appears from the averments of the petition. The petitioner's land is alleged to be land of little value, which can be made valuable only by filling it and then using it for the erection of buildings. The sewer is a large brick sewer, and is a part of a long main sewer designed principally for draining a considerable territory of valuable land situated at some distance above the land of the petitioner. To assess the cost of such a sewer, or the cost not exceeding four dollars per lineal foot of such a sewer, upon the petitioner's land according to the proportion of the number of lineal feet of the boundaries of his lots on the strip of land in which the sewer has been laid to the number of lineal feet of the boundaries of all lots on said strip, he contends, is grossly unjust.

One contention is that the statute violates Article X. of the Declaration of Rights. But the present proceedings do not

relate to the taking of the petitioner's land for the purpose of constructing the sewer, and to the payment of compensation therefor, but to the assessments upon the petitioner's land for the purpose of collecting in whole or in part the expenses incurred in the construction of the sewer. The strip of land in which the sewer has been laid was taken, as we understand, under other provisions of statute, presumably under Pub. Sts. c. 50, §§ 1–3. The assessments, although local, have been laid by virtue of the taxing power of the Legislature in the method prescribed by St. 1892, c. 402, and the amendments thereof. *Howe* v. *Cambridge,* 114 Mass. 388. *Chapin* v. *Worcester,* 124 Mass. 464. *Boston* v. *Boston & Albany Railroad,* 170 Mass. 95.

It is argued that the statute provides for no appeal from the apportionment of the assessable cost of the sewer made by the superintendent of streets. If the superintendent in determining the assessments has committed any error of law, this may be corrected on certiorari, if material. *Bowditch* v. *Boston, ubi supra. Brown* v. *Fitchburg,* 128 Mass. 282. The petitioner also can apply for an abatement under St. 1896, c. 359, and perhaps under other provisions of statute.

The principal objection to the statute is that it authorizes the cost of a sewer not exceeding four dollars per lineal foot to be assessed upon the owners of abutting land, according to the proportionate length in feet of the boundaries of the different lots of land on the sewer, without regard to the value of the land or to the depth or shape or size of the lots, or the size of the sewer as adapted to the drainage of the lots; that the statute is arbitrary and absolute, and excludes everything in the nature of an adjudication with reference to each lot affected by the construction of the sewer. It is not contended that the present sewer cannot be used to drain the petitioner's lots, but it is contended that the land is not worth the expense of draining it until it has been filled, and that the sewer is larger and more costly than is necessary for that purpose, and that the mode of assessment in its application to lots of different shapes and sizes and to lands of different values is disproportionate and unjust.

Different methods of making assessments for the construction of sewers or drains have been sustained by the courts. *Springfield* v. *Gay,* 12 Allen, 612. *Butler* v. *Worcester,* 112 Mass. 541.

*Workman* v. *Worcester*, 118 Mass. 168.  *Snow* v. *Fitchburg*, 136
Mass. 183.  *Leominster* v. *Conant*, 139 Mass. 384.  *Ayer* v. *Somer-
ville*, 143 Mass. 585.  See *Parsons* v. *District of Columbia*, 170 U. S.
45.  In Dillon, Mun. Corp. (4th ed.) §§ 752 *et seq.*, there is a large
collection of cases on the subject.  The result of the authorities
is more specifically stated in § 761, cl. 6, and § 809.  Section
809 reads as follows : " The legislation in this country, however,
as to the mode of making assessments to pay the expense of
constructing sewers, although the burden is usually cast, wholly
or in part, on the abutting property, is various.  As in other local
assessments, so in the case of sewers, the correct principle is
that the assessment upon each parcel of contributing property
shall be according to the special benefits which the particular
parcel receives.  Benefit, actual and probable, is the only founda-
tion upon which an assessment can lawfully rest.  The Legisla-
ture has, within legislative limits, a discretion in providing the
mode of ascertaining the benefits ; but even in the absence of
express constitutional restriction, its power is not unlimited.
This ascertainment may be made, and usually is, by a separate
and actual estimate of special benefits.  But where the lots in a
town or city are small, of the same depth, and similarly situated,
an assessment, under the conditions mentioned in a previous sec-
tion, may be authorized on the basis of frontage, which is a con-
venient substitute for an actual estimate : but this mode cannot
be authorized where it must inevitably operate with manifest
inequality, as will often be the case with rural or suburban
property, or where from the circumstances it is clear that it is
legally impossible that an apportionment of the cost on this
basis can be just or equal, or approximately so, and where in-
justice must certainly result from its adoption," etc.  See *In re
Washington Avenue*, 69 Penn. St. 352; *Seely* v. *Pittsburgh*, 82
Penn. St. 360 ; *State* v. *Newark*, 8 Vroom, 415 ; *Thomas* v. *Gain*,
35 Mich. 155, 162, *Clapp* v. *Hartford*, 35 Conn. 66; Cooley,
Const. Lim. 624 *et seq.*

The weight of authority is that an assessment according to the
frontage of lots abutting upon a street or public way in a city
sometimes may be a reasonable mode of making an assessment
for the cost of constructing a sewer in such street or way because
of the similarity of the lots, but that such an assessment when

the sewer is not constructed in a street or way or is constructed in the country where the lots abutting are not laid out as building lots, often would be unreasonable. Pub. Sts. c. 50, § 7, is confined to lots on a street or way.

In the present case the order of the board of aldermen of July 11, 1892, directed the superintendent of streets to " make a sewer in a certain unaccepted street called Railroad Street, and in private land . . . located as shown on a plan on file in the office of the superintendent of streets marked ' Roslindale Main Sewer,' and dated July, 1892." The land to be taken is described in Exhibits D and F, annexed to the respondent's answer, wherein it appears that on July 11, 1892, the board of aldermen " Resolved, that it is necessary for the public convenience that a main drain or common sewer should be laid in and through a certain unaccepted street called Railroad Street, in Ward 23, and in and through certain private lands," etc., and they proceeded to take for that purpose a strip of land eight feet wide in a certain unaccepted street called Railroad Street, of which the supposed owners of the fee were William S. Mitchell, Otis S. Weed, Jr., Lewis F. Rogers, and Charles A. Morss. The description of the so called Railroad Street in the petition is as follows: " Said parcel marked and called ' Railroad Street,' and all the other lots above mentioned, consist of low, wet meadow land, unfit for dwelling-houses, and of little or no value for agriculture or pasturage purposes, and not capable of being utilized for any purpose of business or profit, either by erecting buildings thereon or otherwise, without great outlay and expense, especially for filling."

The petitioner, among other things, contends that, " If said act be held to be valid, then the said assessment is void, so far as the same affects said lots of your petitioner, for the reason that none thereof is subject to assessment on account of said sewer under said act, the said lots 1, 2, 16, 17, 18, 19, 20, 21, 22, and 23, and said triangular lot, not abutting on any highway or strip of land within which said sewer is made within the plain meaning and intent of said act." We understand the petitioner to aver that he is the owner in fee of the whole of the parcel called Railroad Street. The meaning of the averments of the petition, as we understand them, when taken in connection with the record, is

that the so called Railroad Street is not a highway or a public street, or a street at all except on paper; that it is merely a long strip of land about forty feet wide, according to a plan of house lots exhibited to us, and that it has not been wrought for travel or used as a street. There is no evidence or suggestion that any lot of land has been conveyed bounding on the so called Railroad Street. The board of aldermen have taken a strip eight feet wide, in or near the centre line of this so called Railroad Street, and in this strip the sewer has been laid. The land bordering on the strip taken is the lot called Railroad Street, on either side of the strip. If the lots according to the plan be considered as separate parcels of land, the lot called Railroad Street is the only lot which borders upon the strip of land taken, so far as the sewer has been laid within the limits of Railroad Street. The lots bordering upon the sides of the lot called Railroad Street do not themselves border on the strip of land which has been taken for the sewer. It may be that, as these lots appear only on the plan and are therefore separate lots only upon paper, the superintendent of streets in making the assessments should have disregarded the plan, and made the assessment upon all the land of the petitioner bordering on each side of the strip of land taken for the sewer. But if this is so, the assessments in their present form cannot be sustained, as, with the exception of lot 15, they purport to be assessments upon lots bordering upon Railroad Street, and not upon land bordering upon the strip of land taken. If the lot called Railroad Street is to be considered as the only lot bordering on the strip of land in which the sewer has been laid, then the whole assessment, so far as the cost of constructing the sewer in Railroad Street is concerned, should have been laid on Railroad Street. It may be that the assessment so laid would be more than the value of the land in Railroad Street. These considerations show the difficulty of applying the statute where the sewer is constructed, not in a street or way, but in a strip of private land taken for the purpose. The lots of land bordering on this strip may vary greatly in shape, size, or depth, and in value per foot, and some lots may be inadequate to bear the burden of the assessments. Assessments under such circumstances, according to the frontage of lots on the strip taken,

may be grossly disproportionate to the benefit to the lots received from the construction of the sewer. Confining ourselves to the present case, where the sewer has been laid, not in a street, but in a strip of private land taken for the purpose, we are of opinion that the method of laying the assessments prescribed by the statute is unreasonable and disproportionate, and that the statute in this respect is unconstitutional. Const. Mass. c. 1, § 1, art. 4.  *Writ of certiorari to issue.*