NICHOLAS M. CROFTS & others *vs.* BOARD OF ASSESSORS OF
NORTH ADAMS.

SAME *vs.* MAYOR AND CITY COUNCIL OF NORTH ADAMS.

JOSEPH BENOIT & others *vs.* SAME.

Berkshire.    September 20, 1927. — November 11, 1927.

Present: BRALEY, CROSBY, PIERCE, CARROLL, & WAIT, JJ.

*Tax,* Assessment: for street construction, for sidewalk construction.
*Statute,* Repeal.    *Constitutional Law,* Taxation, Due process of law.
*Certiorari.    Laches.*

St. 1897, c. 75, relating to the grading and paving of streets in North
Adams, is unconstitutional in that it permits the levy of assessments for
public improvements which are or are likely to be in excess of any
benefit conferred upon the property assessed.

Petitions for writs of certiorari quashing assessments by a city upon abut-
ting landowners of a part of the cost of pavement constructed after
proceedings under the provisions of an unconstitutional statute were
*held* not to have been barred by reason of the facts that it appeared
that the order for the construction of the pavement was made on April 1,
1924, the construction was completed on August 25, 1924, an applica-
tion by the petitioners to the mayor and council for abatement of the
assessment was not filed until May 10, 1926, and the petitions for
certiorari were not filed until April 12, 1927, if it did not appear that the
respondents were harmed by the delay, that they had taken action in
reliance upon acquiescence or consent by the petitioners, or that the
petitioners in any way had acknowledged the validity of the assessments.

An order by a city council, approved by the mayor, directed the construc-
tion of a sidewalk on a certain street, part of which was in front of
property owned by the city. After the completion of all of the sidewalk
excepting a portion of that in front of property of the city, the city coun-
cil adopted an order under G. L. c. 83, § 26, assessing one half of the cost
of the portion constructed opposite property owned by private persons
upon the owners of that property. *Held,* that it was not open to the
owners of the private property so assessed to complain in a petition for
a writ of certiorari that the assessment was levied before the entire
sidewalk was completed.

A petition for a writ of certiorari, filed in court on April 12, 1927, to quash
assessments ordered by a city council on January 13, 1925, for one half
of the cost of the construction of a sidewalk completed on August 25,
1924, is barred by laches if it appears that the assessment was upon
thirty-two parcels abutting upon the sidewalk and the entire amount

assessed was $1,800; that at the time of the filing of the petition only $360 of the assessment remained unpaid; that that amount was assessed upon only eight of the parcels and that owners of three of those eight parcels had accepted from the city improvements upon the property for which they paid nothing; and that an application filed with the mayor and city council by a committee of three, one of whom afterwards became one of the petitioners for certiorari, had sought an abatement of the assessment only on the ground that the sidewalk was laid on a wrong location.

Section 28 of G. L. c. 83, making applicable to that chapter the provisions of c. 80 "relative to the apportionment, division, reassessment, abatement and collection" of betterment assessments, does not make so applicable the provisions of § 2 of c. 80 with regard to estimate and record.

THREE PETITIONS, filed in the Supreme Judicial Court for the county of Berkshire on April 12, 1927, and afterwards amended, for writs of certiorari.

In the first two cases, the allegations of the petitions as amended were the same. The prayer of the first petition sought a certification by the board of assessors of the city of North Adams of all their records relating to the assessment upon the several petitioners of a portion of the expense of paving and erecting curbstones upon West Main Street in North Adams, which was constructed after proceedings under St. 1897, c. 75, in order that all acts of the respondents with respect to such assessments might be quashed. The prayer of the second petition sought certification by the mayor and city council of all their records with respect to the same subject matter and for the same purpose.

The third petition was by forty owners of property on a portion of the south side of West Main Street in North Adams, and sought a certification by the mayor and the city council of all their records respecting an order for the construction of a concrete sidewalk on such southerly side of West Main Street and of the laying of assessments upon the abutting estates for a part of the cost thereof, to the end that the order for the construction of the sidewalk and "all of the orders and assessments so passed and made may be quashed." The petitioners set out the order of the respondents as to a sidewalk on the southerly side of West Main Street passed under date of April 1, 1924, which is hereinafter

described, and alleged that it was "illegally adopted for the following reasons.  (a) Said order was not passed or adopted in the manner provided by § 24 of St. 1895, c. 148, incorporating the said city of North Adams.  (b) Because said order was read only once.  (c) Because said order was not read twice with an interval of three days between the two readings before being finally passed or adopted, nor was the vote upon the final passage of said order taken by roll call as required by said § 24, nor had said council theretofore been requested in writing by William K. Greer, mayor of said city to pass said order on the same day, which written recommendation was required by said § 24 before said order could be legally adopted upon the same day."

The petitioners in the third petition further alleged that the sidewalk was constructed along the southerly side of West Main Street in the year 1924 and completed in its whole length in front of the premises of the petitioners and also for about two hundred feet along land of the city on or about August 25, 1924, before assessments were laid therefor, "but leaving a portion of the sidewalk so to be laid by virtue of said order unconstructed in front of the lands of said city, so abutting on the southerly side of said West Main Street for a distance of about five hundred feet.  These five hundred feet of sidewalk, in front of city's land, were not laid and completed until October 23, 1925."

The petitioners in the third petition further alleged that no benefits to the abutting estates had been determined "as required by G. L. c. 80, § 1," that "no plan or estimate of damages which may be assessed as required by" G. L. c. 80, § 2, had been recorded as therein provided, and that the assessments upon the abutting estates were prematurely made, were illegal and void (a) because such assessments could not be legally made until the betterments had first been determined, as provided in § 1 of said G. L. c. 80, and (b) because no assessments could be made until the order passed and the plans and estimates of damages had been recorded as required by § 2 of said G. L. c. 80.

Without a preliminary hearing on an order to the respective respondents to show cause, the respondents in each

petition filed what purported to be a return. The return in the first case contained certified copies of records of proceedings of the respondent members of the board of assessors relating to the assessments for paving only.

The respondents mayor and members of the city council filed in the second and third cases an identic document. This document, besides containing what the respondents stated were "copies of the official records of the mayor and city council of North Adams with respect to the subject matter of the petition herein," also contained certain allegations of fact. Such facts as related to the first two petitions, namely, to the orders and assessments respecting the paving of the street, are stated in the opinion.

The allegations in that return relating to the subject matter of the third petition, namely, the orders and assessments as to the sidewalk, included the following, among others: "That the actual work on said pavement and sidewalks was started on" May 8, 1924, and was completed on or about August 25, 1924; that the final payment "on the contract for said pavement and sidewalks was made to the contractor October 10, 1924"; that the amount assessed for the sidewalks upon the abutters was $1,800.09; "that all of the sidewalk assessments, except the sum of $360.12, has been paid by the abutters," in accordance with a statement which was made a part of the record and is hereinafter referred to. There were then the following paragraphs:

"And the respondents further say that from the time when the resolution of June 1, 1923, [the first proceeding as to paving, with no reference to the sidewalk] hereinbefore named, down through the several orders of the respondents and from the beginning of the work of construction of said sidewalks and paving on said West Main Street to its completion on or about October 10, 1924, no action or proceeding of any kind was instituted by the petitioners protesting or objecting to the work, or with respect to any proceedings in connection with said paving, sidewalks, walls, steps, or other improvements on said street, until the tenth day of May 1926, when the petition of Nicholas M. Crofts and others, attached and made part of the records . . . was filed with the re-

spondents; petition for certiorari filed April 12, 1927; that the petitioners are residents as well as abutters on said street, and that they stood by while said work was going on; that they knew of the progress of said work from day to day; that they were silent for two years after the work was completed, and that they remained silent until long after they had received from the collector of taxes of the city of North Adams a statement of the amount assessed against them for the paving and sidewalks.

"The respondents further say that the petitioners had knowledge of the salient facts and stood mute and saw great expenditures made and liabilities incurred in reliance on the validity of the prodeedings, and now attempt to avail themselves of certiorari to quash them as lacking legal formality."

The petitioners in the third petition filed what was called a "Replication and Answer to Respondents' Return." Besides formally denying the conclusions of law set out in the return, the petitioners in that document denied that the sidewalk on the southerly side of West Main Street was completed on or about August 25, 1924, and alleged that it was not completed until October 23, 1925. They also denied that final payment on the contract for said pavement and sidewalk was made to the contractor on October 10, 1924. They also denied all statements "in the several returns imputing laches to your petitioners and further say that as the proceedings complained of by them are entirely null and void, laches can in no way be imputed to your petitioners . . . and they further claim that if laches could be considered in these proceedings they have not been guilty of laches on any facts shown in these proceedings."

The only proceedings of the respondents relating to the sidewalk assessment, the subject matter of the third petition, which were shown by the copies of the official records made a part of the respondents' return, showed the following:

On April 1, 1924, the city council "by a unanimous vote" adopted the following order:

"It is hereby adjudged that the public convenience require that a concrete sidewalk be constructed on the south side

of West Main Street between Brown Street and State Road, so called.

"It is therefore,

"Ordered: that a concrete sidewalk be constructed on the South side of West Main Street between Brown Street and State Road, so called, not less than five nor more than six feet in width adjoining on the south, the south curb to be established on said street, and that one-half of the cost thereof, be assessed upon abutting estates, all under the provisions of chapter 83 of the General Laws as far as applicable."

The mayor approved the order on April 2, 1924.

The record nowhere shows any communication from the mayor, preceding the adoption of the above order, respecting the order or the construction of the sidewalk therein described, nor that there had been any preceding reading of the order whatever, nor that its final passage had been taken by roll call, nor that the vote upon it had been by a yea and nay vote.

On April 3, 1924, the city clerk and clerk of the city council recorded in the Northern Berkshire registry of deeds an affidavit setting forth the adoption of the foregoing order "by a two-thirds vote of all" members of the city council, "which order was duly approved by the mayor of said city" on April 2. The clerk's affidavit also contained an averment that the statement was made "that all assessments made or charges imposed under G. L. c. 83, and amendments thereof, upon any land which abuts upon said sidewalk shall constitute a lien upon such land from the time this statement is recorded in said registry of deeds."

The next record as to the subject matter of the third petition was a certification to the city council by the commissioner of public works of North Adams under date of December 10, 1924, that by virtue of the order of April 1, 1924, above set out, "such portion of the work on said street for which one half the cost thereof is assessed has been completed, the total cost of which is $3,600.18," and naming the owners of the estates abutting on the sidewalk with the extent of their respective frontages. Next was a record of

an order offered to the city council on December 12, 1924, for the laying of assessments of one half of the cost of the sidewalk, namely, $1,800.09, upon the owners of thirty-five abutting estates. This order was read on December 12, 1924, and was passed to its second reading. On January 13, 1925, it was read and adopted by a yea and nay vote unanimously. Next was a record of a petition, dated May 10, 1926, and filed with the mayor and city council by "Dr. N. M. Crofts, Owen Haggerty and Sterling E. Smith [of whom Owen Haggerty alone was a petitioner in the third petition], in our own behalf, and as a committee for other citizens, and taxpayers, hereinafter referred to as abutters," in which they sought to have the mayor and city council abate both the assessments made under the paving order (which was the subject matter of the first two petitions) and the assessments made under the sidewalk order (which was the subject matter of the third petition). Their contention as to the sidewalk was solely that it was laid out on the wrong location. The records show that this petition was read in the city council on June 1, 1926, and was referred to the committee on claims, and that on August 3, 1926, that committee reported that, having considered it, they deemed it a subject involving legal procedure and they therefore recommended "that this matter be left in the hands of the city solicitor." The report was read and adopted on the same day that it was filed.

From various documents included in the respondents' return, it appeared that on April 18, 1927, six days after the filing of the petition in this case, only $360.12 of the $1,800.09 assessed for the sidewalk assessment remained unpaid, being assessments upon eight of the thirty-five abutting estates, the owners of which apparently included ten of the forty petitioners in the third petition. There was nothing to show whether those who had paid the assessment had made payments under protest or in what circumstances they had made the payments. There was nothing in the return or the copies of records to show when the notices of assessments were given to the petitioners or to any of them, unless the record in the registry of deeds, which preceded the assess-

ment, were such notice. It appeared, however, that more than twenty of the petitioners had profited by having walls and other improvements made on their property by the city without charge, and that three of these twenty were among the eight who had not paid the sidewalk assessment.

An agreed statement of facts was filed which referred to all three petitions. While such statement included facts as to the presentation of bills for the several paving assessments, they included no fact as to the presentation of bills for the sidewalk assessments.

It further appeared from the agreed statement that the sidewalk which was the subject matter of the third petition was completed in front of the premises of the petitioners and for about two hundred feet along land of the city in 1924; that five hundred feet of it along the lands of the city was not constructed until October 23, 1925.

By order of *Crosby*, J., the three cases were consolidated for hearing and were reserved for determination by the full court "upon the several petitions, as amended, the several returns and the replications and answers to the returns and the agreed statement of facts."

St. 1895, c. 148, § 24, reads as follows:

"In case any ordinance, order, resolution or vote involves the appropriation or expenditure of money to an amount which may exceed two hundred dollars, the laying of an assessment or the granting to a person or corporation of any right in, over or under any street or other public ground of said city, the affirmative votes of a majority of all the members of the city council shall be necessary for its passage. Every such ordinance, order, resolution or vote shall be read twice, with an interval of at least three days between the two readings before being finally passed, and the vote upon its final passage shall be taken by roll call: provided, however, that upon and after the written recommendation of the mayor, the city council may pass such ordinance, resolution or vote upon the same day, by a two thirds yea and nay vote."

*C. H. Wright*, (*M. E. Couch* with him,) for the petitioners.
*P. J. Ashe*, (*H. P. Drysdale* with him,) for the respondents.

WAIT, J. These are three petitions for certiorari. The petitioners in the first two are the same. They seek by proceedings, in the first petition against the board of assessors, and in the second against the mayor and city council of North Adams, to annul action taken in assessing upon the several petitioners certain sums for paving a way in North Adams. The petitioners in the third, brought against the mayor and city council, seek to annul action in assessments for the construction of a sidewalk along said way.

The returns show that the assessments for paving and edgestones for the purpose of paving were made under authority claimed to be derived from St. 1897, c. 75. No contention is made that they are valid unless so authorized. The petitioners assert that the statute has been repealed by G. L. c. 80, § 17, and the legislation codified therein; and that, if not so repealed, the act is, none the less, nugatory for the reason that it is unconstitutional.

St. 1897, c. 75, approved February 18, 1897, entitled "An Act to authorize the city of North Adams to grade and pave its streets and to issue bonds or notes therefor," by § 1 provided that "The mayor, and the city council of the city of North Adams by a two thirds vote of all its members, whenever they adjudge that the public convenience and necessity require, may order that any public street, highway or part thereof shall be paved with granite blocks, vitrified brick, asphalt or other suitable solid material, and provided with necessary curbstones for the purpose of such paving; and thereupon the commissioner of public works shall cause such public street, highway or part thereof, to be graded, paved and provided with necessary curbstones, in accordance with the provisions of such order, and shall certify an itemized account of all expenses incurred and paid on account of such order to the assessors of taxes. Such account shall include all damages paid to any owner of real estate for injury sustained in his property by reason of any raising, lowering, or other act done for the purpose of repairing such street or highway, as herein authorized. At any time within two years after such street, highway or part thereof shall be so graded and paved, the assessors of taxes shall assess in

just proportion upon the real estate abutting on any such street, highway or part thereof, one half the expense of such grading, paving and constructing curbstones, except that every street railway now or hereafter operated in said city shall be assessed by said assessors for and shall pay the whole expense of grading and paving that portion of every street graded and paved which is covered by its rails, and a space eighteen inches outside of and adjoining its tracks on either side. The amount to be paid by any street railway shall in every case be first ascertained and deducted from the total expense of grading and paving and constructing curbstones under this section, before any assessment is made upon abutting real estate, and no assessment shall be made until the work of grading and paving shall be completed." By other sections, the assessments were made a lien on the real estate; provision was made for reassessment, for apportionment of payments; for revision by jury on petition of a party aggrieved by the doings of the assessors; for costs in such proceedings; for collection by lessors assessed from lessees of · lands leased after the passage of the act; for deduction from assessments if benefit was set off in any proceeding for damages caused by any act done under authority of the statute; for the issue of bonds or notes not to exceed in the aggregate $100,000 "beyond the limit now prescribed by law and in addition to all amounts hitherto authorized" which should be payable in equal annual instalments in not exceeding five years from their date to be designated "Permanent Improvement Loan, Act of 1897," and, in payment of which the city treasurer was to certify to the assessors each year the amount issued and outstanding, and the assessors in each year were to assess on the real and personal estate subject to taxation and situated in North Adams sums sufficient to discharge all payments for principal and interest falling due, the city to raise such sums by taxation; for power to the city council to authorize the city treasurer to sell such bonds or notes in his discretion for not less than par, the proceeds to be used to pay "for the grading and paving of such streets or part thereof as may be designated by the city council under this act, and providing curbstones for the same," no

bonds or notes issued under the act to be included in determining the debt limit of the city.   The act by .§ 7 also provided that "Whenever the mayor and city council pass an order to grade and pave a street, highway or part thereof under this act, the mayor shall within thirty days thereafter file a declaration thereof in the registry of deeds for the northern Berkshire district, which shall state in general terms the action of said mayor and council, and shall state the streets, street, highway or part thereof upon which such parcels of real estate subject to assessment under this act are situated. The register of deeds shall cause such declaration to be forthwith entered in book kept for the purpose, and classified according to the names of the streets specified therein." Such an act was, obviously, special legislation affecting only the city of North Adams.

The court is not informed whether any, and if any what, . action was taken by the city under this statute within the quarter of a century which elapsed between its enactment and the beginning of the proceedings challenged in these petitions.

In the years 1898, 1900, 1901 and 1903, this court, in *Weed* v. *Mayor & Aldermen of Boston,* 172 Mass. 28; *Dexter* v. *Boston,* 176 Mass. 247; *Lorden* v. *Coffee,* 178 Mass. 489; and *White* v. *Gove,* 183 Mass. 333, in dealing with statutes very similar to St. 1897, c. 75, decided them to be unconstitutional, because they permitted the levy of assessments for public improvements in ways and sewers which were calculated or likely to be in excess of any benefit conferred on the property assessed.   See *Carson* v. *Brockton,* 175 Mass. 242; *Hall* v. *Street Commissioners,* 177 Mass. 434.   The reasoning of the opinions in *Union Street Railway* v. *Mayor of New Bedford,* 253 Mass. 304, and 253 Mass. 314, shows that the provision made by § 1, for assessment upon any street railway, is also obnoxious to the Constitution for like cause.   The returns in the cases before us show an assessment of $1,292.44 on property valued at $1,000; of $13,211.09 upon a street railway company with nothing to indicate that it owns any property abutting on the way benefitted by the improvements.   The assessments upon the petitioners of a specified amount per

front foot of their land are unequal in burden. One estate valued at $7,300 is assessed $208.56, while another valued at $6,450 is assessed $587. It cannot be said that a charge based upon the front foot is always inequitable, see *Weed* v. *Mayor & Aldermen of Boston, supra,* at page 32, but, manifestly, the inequality resulting from such a method of assessment in the existing circumstances is too gross to be permissible. See *White* v. *Gove, supra,* at page 336. The language of the statute requires an assessment "in just proportion"; but it makes no provision that the half of the total expense which is to be assessed upon the land shall not exceed the benefit conferred. It well may be that the benefit is much less than half the expense. The cases referred to decide that legislation imposing a charge which exceeds the benefit is unconstitutional because it takes property without providing a just compensation.

It is to be noted also that any street railway whose tracks lie in the way dealt with is to be assessed for the whole expense of grading and paving the portion of the way occupied by its tracks and a space of eighteen inches on either side of them, and that no consideration is paid to the amounts of benefit conferred. In the *Union Street Railway* v. *Mayor of New Bedford* cases, *supra,* this was held to invalidate a betterment assessment. The assessment here is manifestly not intended to be an excise tax. It is an exaction toward the expense of a public improvement, and must be limited by the benefit conferred upon the property subjected to it.

The statute, therefore, is unconstitutional: and for that reason the assessments challenged in the first and second petitions are invalid. It is unnecessary to consider the other objections urged against their validity.

The respondents have set up laches on the part of the petitioners. In the first two of the cases the petitioners are threatened with loss of property under an unconstitutional proceeding. It does not appear that the respondents have been harmed by the delay; that they have taken action in reliance upon acquiescence or consent of the petitioners; nor that the latter have in any way acknowledged the validity of the assessments complained of. In such circumstances, we

find no laches which should defeat the petitions. *Harwood v. Donovan*, 188 Mass. 487, is not controlling, for there partial payments upon illegal assessments had been made for five years before instituting proceedings.

Different considerations apply to the third petition. The proceedings resulting in the assessments for laying sidewalks were taken under G. L. c. 83. The order required the construction of a concrete sidewalk "on the south side of West Main Street, from Brown Street to State Road so called" and provided that one half the cost be assessed upon abutting estates. Work upon so much of the sidewalk as was in front of premises of the petitioners was begun and completed in 1924, but work on a portion fronting upon premises belonging to the city was not begun until May, 1925, and was completed on October 23, 1925. The order providing for the assessment was made on December 12, 1924. It recited that "such portion of the work on said street for which one-half the cost thereof is assessed has been completed, the total cost of which is \$3600.18"; and assessed one half that sum upon the estates of the petitioners. The petitioners contend that the assessments are invalid because § 24 of the city's charter (St. 1895, c. 148) was not complied with; because no such estimate and record were made as are required by G. L. c. 80, § 2; and because the order was made before the entire work was completed.

The order for construction of the sidewalk and the assessment of one half the cost was made under G. L. c. 83, §§ 25–28, inclusive. It was constitutional. *Howe* v. *Cambridge*, 114 Mass. 388. The provisions of G. L. c. 80 "relative to the apportionment, division, reassessment, abatement and collection" of betterment assessments, made applicable by G. L. c. 83, § 28, to sidewalk assessments, do not include the requirements of G. L. c. 80, § 2, in regard to estimate and record. The return shows that record to comply with G. L. c. 83, § 27, was made.

It is true that the entire work contemplated by the order of April 1, 1924, had not been completed when the order for assessment was made on January 13, 1925. Nevertheless all work for which an assessment could be collected had been

done.   What work remained unfinished was to be done on a portion of the sidewalk adjoining land of the city.   The work for which an assessment was contemplated when the order for construction was passed had actually been completed before January 13, 1925.   The petitioners were not affected.   It is not open to them to complain of conduct which did not injure them.

It may be that there was a failure to comply with the provisions of § 24 of the city's charter (St. 1895, c. 148) in the unanimous adoption by the city council on April 1, 1924, at a single reading and without a yea and nay vote, of the adjudication of public convenience as to the concrete sidewalk and the order for its construction.   It would not necessarily follow, however, that the petitioners are entitled to maintain the third petition.   Certiorari does not issue as a matter of right.   In their return, the respondents set up laches of the petitioners.   It appears from the record that the expense of the construction of the concrete sidewalk was less than three per cent of the expense of a work of public improvement on West Main Street which had been under consideration by the public authorities since 1923, and which ultimately cost $125,000.   The votes as to the paving (which was the subject matter of the first and second petitions) and as to the sidewalk (which was the subject matter of the third petition) were passed by the city council on the same day, the first on a written recommendation by the mayor.   In addition to that paving and the sidewalk, and in connection with them in carrying out the improvements on the street, the city expended a large sum of money for renewing old sidewalks and building steps and concrete retaining walls.   The entire work was a unit of which the public and especially the abutting owners had full knowledge.   No evidence of any complaint from the petitioners in the third petition is found in the record until May 10, 1926, when a committee of three, one of whom afterwards was a petitioner in the third petition, purporting to act for "abutters," presented a petition to the city council for abatement of both assessments.   The expressed ground for abatement of the sidewalk assessment was an improper location of the sidewalk.   Nothing was

said as to the violation of the charter later relied on. Of the forty petitioners in the third petition, all but eight have paid the amount of the assessment to the city. Of these eight, three have received the benefit of the improvements in the nature of retaining walls built by the city without expense to them.

It is clear that in the exercise of a sound discretion the writ should not issue in the third case. *Byfield* v. *Newton*, 247 Mass. 46, 58, 59. *Harwood* v. *Donovan*, 188 Mass. 487.

The writ must issue in the first two cases, and is denied in the third case.

*So ordered.*