## CAPE ANN CITIZENS ASSOCIATION & others[1] *vs.* CITY OF GLOUCESTER.

No. 97-P-0808.

Essex. April 29, 1998. - May 28, 1999.

Present: ARMSTRONG, LENK, & BECK, JJ.

*Gloucester. Federal Clean Waters Act. Municipal Corporations,* Charter, Sewers. *Taxation,* Sewer assessments.

Certain provisions of the Gloucester city charter, mandating the appointment of a designer selection committee and a city building committee for building projects, were not applicable to public works such as the construction of a sewer system. [19-23]

CIVIL ACTION commenced in the Superior Court Department on February 23, 1996.

[1] The original complaint identified the plaintiff as "Cape Ann Citizens Association, by Joseph R. Grace, Chairman; Joel Soucy, Vice Chairman; Emmy Cutler, Secretary; and Barbara Scoppa, Treasurer." The four officers of the association were identified in the complaint as Gloucester residents. On removal to the Federal District Court, the judge analogized the case to a ten-taxpayer action under G. L. c. 40, § 53, and ruled that the association and its members had no standing to challenge the 1994 consent decree that called for Gloucester to implement the STEP sewer project described in the opinion because the plaintiffs had failed to raise its ten-taxpayer challenge before the city had obligated itself to undertake the project. See *Kapinos* v. *Chicopee,* 334 Mass. 196, 198 (1956). The Federal judge expressly declined to reach the issue of whether the nearly completed STEP sewer project had been designed and constructed in violation of city charter provisions calling for a designer selection committee and a city building committee and, if so, whether those violations would bar the city from defraying a portion of the construction costs through betterment assessments on the affected homeowners. The Federal judge remanded the case to the Superior Court for determination of the points he had not decided. On remand, the plaintiffs were permitted to amend the complaint to add other affected homeowners "individually and collectively as taxable inhabitants of . . . Gloucester under G. L. c. 40, § 53," as well as to add the city council and several city officials and boards as defendants.

The case was heard by *Richard E. Welch, III*, J.

*Philip H. Cahalin* for the plaintiffs.

*Linda Thomas Lowe*, General Counsel, for the defendant.

ARMSTRONG, J. In 1992 the mayor of Gloucester entered into a consent decree in the Federal District Court to resolve an action brought by the Federal government against the city to enforce the Federal Clean Waters Act. One provision of the decree, as amended in 1994, called for the city to construct a STEP sewer system, described in the margin,[2] to abate water pollution from roughly seventy-five houses in North Gloucester. On obtaining easements from the homeowners, the city would install STEP system septic tanks, and maintain them as well as the sewer system to which the tanks were connected. The cost would be borne by the city but would be defrayed in part by betterments assessments to affected homeowners. The plaintiffs, who were affected homeowners, feeling that the technology involved was inordinately costly compared to other methods of resolving any pollution problem, brought this action to oppose the implementation of the decree, contending that construction of the system was illegal because of violations of the city charter. These illegalities, they claimed, relieved them of any responsibility for paying sewer betterments assessments that the city proposed to commit to the tax collector. On removal by the city to the Federal District Court, several points in contention were resolved in the city's favor and what remained of the action was remanded to the Superior Court. A judge of the latter court ruled that the plaintiffs lacked standing to assert that implementation of the project had violated the city charter and that, alternatively, the city charter was not violated. Accordingly, the judge declined to enjoin the city from committing the betterments assessments for collection and, by way of limiting the effect of the judgment, declared that homeowners against whom the betterments were assessed retained the right to challenge those assessments through the abatement process on the traditional grounds of disproportionality and excessiveness.

[2]A STEP sewer differs from a conventional sewer in that it requires special septic tanks and mechanical pumps to be installed on homeowners' properties. The effluent from each home is first treated in the septic tanks on-site by mechanical and biological means before being pumped into the public sewer pipes.

From a judgment to that effect,[3] the plaintiffs brought the present appeal.

Because doing so does not affect the substance of our decision, and because of the possibility that the individual plaintiffs could assert the alleged charter violations in later applications for abatements (see *Bowditch* v. *Superintendent of Sts. of Boston,* 168 Mass. 239 [1897]; *Warren* v. *Street Commrs. of Boston,* 181 Mass. 6 [1902]; *Crofts* v. *Board of Assessors of N. Adams,* 261 Mass. 191, 204-205 [1927]), we pass over the issue of the plaintiffs' standing and proceed directly to consider their contention that the city, by failing to appoint a designer selection committee to select the architects and designers of the STEP system and a city building committee to oversee its construction, violated §§ 5-4 and 5-5 of the city charter.

The relevant sections of the city charter are set out in the margin[4] as they appeared before and after amendments that were adopted in 1985 on the recommendation of a 1984-1985

---

[3]The judgment was described as a partial final judgment in recognition of the fact that a portion of the case was decided by the Federal District Court judge.

[4]Article 5, §§ 5-4 and 5-5 of the city charter of Gloucester, as amended by referendum of November 5, 1985, provided as follows. The emphasized language was added, and the bracketed language was deleted, by the 1985 revisions.

"Section *5-4* [7-17]. Designer Selection Committee.

"(a) Composition, Mode of Selection, Term of Office — There shall be a designer selection committee which shall consist of three persons appointed by the mayor [for terms of three years each such that the term of office of one member shall expire each year] *for each new project.* In making his appointments to the committee the mayor shall seek to assure representation from as many of the following areas as is possible: architecture, landscape architecture, construction industry, art and finance.

"(b) Powers and Duties — Whenever an architect, *or designer,* is to be engaged by the city for any reason the designer selection committee shall be consulted and shall make the selection. *All designers and architects in charge of a project shall be registered.*

"Section *5-5* [7-18]. City Building Committee.

"(a) Composition, Mode of Selection, Term of Office — Whenever an architect, *or designer,* is engaged by the city a city building committee shall be established for that project which shall consist of seven members appointed by the mayor for terms of three years each so arranged that the term of office of as nearly an equal number as is possible shall expire each year, provided however, that upon the completion of any project for which a committee is appointed under this section the terms of all members shall be terminated and the committee dissolved. In making his appointments to the committee the mayor shall assure representation from the following fields: the construction

charter commission. Before the city proceeded with the North Gloucester sewer project, the mayor sought and received an opinion from the city's general counsel that §§ 5-4 and 5-5 applied to building construction, not "public works" construction, as those terms are used in the statutory schemes differentiating between the two for public bidding purposes (G. L. c. 149, §§ 44A-44I, for public building projects, and G. L. c. 30, § 39M, for public works projects otherwise), see *J. D'Amico, Inc.* v. *Worcester*, 19 Mass. App. Ct. 112, 113-116 (1984), and that sewer construction projects fell within the "public works" category (see *Deary* v. *Dudley*, 343 Mass. 192, 194 [1961] [sewer not a building]; *Modern Continental Constr. Co.* v. *Lowell*, 391 Mass. 829, 838-839 [1984]) and thus did not require the appointment of a designer selection committee or a city building committee.[5] The city sought and received a verification of this advice from the Attorney General's office. The Superior Court judge concurred in this view, reasoning that the sections of the charter appeared to reflect the requirement of State law, G. L. c. 7, § 38K, that cities and towns establish designer selection procedures comparable to those employed for State building construction projects under G. L. c. 7, §§ 38A½ - 38O, inclusive. It is not disputed that § 38K applies only to building projects, not public works projects.

If we were restricted to looking at §§ 5-4 and 5-5 without the benefit of their historical background or of the State statutory scheme that calls for openness in designer selection and public bidding projects, we might be hard put to limit the bare

---

industry, the building trades, the municipal agency which will be responsible for the facility upon its completion, a person familiar with the use of such facilities in general, and [three] representatives of the public at large.

"(b) Powers and Duties — The committee shall be the representative of the city in all dealings with the architect including but not limited to the following: preparation of all bidding documents; supervision of public bidding process; award of contract to successful bidder; compliance with the program and time requirements of the city; evaluation of the quality, appropriateness and functional attributes of the architect's solution or proposal; periodic meetings with the architect and builder to assure compliance as the project moves forward; review of all change orders during the construction phase; and all other powers and duties as are necessary and appropriate."

[5]In 1985, after the Gloucester charter commission had formulated the amendments that are at issue in this case, G. L. c. 30, § 39M, was amended to include bidding on the construction of public buildings costing less than $25,000. The amendment has no bearing on the general distinction drawn between public building construction and public works construction.

text of the charter sections to so-called building projects. Little thought appears to have been given by the draftsmen of either of those sections or their predecessors to defining precisely their scope. But some sense of scope is ascertainable from the subject matter and the text. Looking first to the predecessor sections, we note that they spoke only of "architects," a term which one usually associates with "vertical" construction projects rather than sewer systems; and the insistence of § 5.4 (designer selection committee) on representation of architects, but not engineers, suggests primary concern with construction that has a visual or aesthetic aspect rather than construction that is purely functional. In both the present and prior charter sections, the "city *building* committee" (emphasis added) would oversee construction of a "facility," see § 5-5(a), a word that carries overtones from related State law, see G. L. c. 7, § 38A½(*b*), incorporating G. L. c. 7, § 39A(*f*), (*g*), (*g*½) & (*h*), wherein "capital facilities" are defined in terms that suggest vertical construction, such as buildings or other structures, and the systems (heating, ventilation, air conditioning, etc.) within them, and pointedly exclude from the jurisdiction of the State designer selection board, G. L. c. 7, § 38C, "buildings or structures which are required to be constructed as integral parts of the development of sewer . . . systems." G. L. c. 7, § 39A(*g*½), as inserted by St. 1984, c. 484, § 7. There is thus a fair basis for the understanding that the predecessor charter sections, §§ 7-17 and 7-18, applied exclusively to the selection of architects to design, and the appointment of "building committees" to oversee the construction of, public buildings.

The plaintiffs effectively concede that this is a correct reading of the pre-1985 charter, but argue that the very purpose of the 1985 revisions was to expand the charter sections beyond what was required by G. L. c. 7, § 38K, and, in particular, to extend coverage to public works construction projects like the North Gloucester STEP sewer construction project. In assessing this argument, we look primarily to the major textual changes effected by the 1985 amendment, which were threefold: (1) the addition of the phrase "for each new project" in § 5-4; (2) the addition of "or designer" after "architect" in both sections; and (3) the addition of a registration requirement in § 5-4 for both designers and architects.

Regarding the first change, we note that the principal support for the plaintiffs' contention that the revisions broadened the

charter to reach public works projects is an affidavit to that effect by the plaintiff Joseph R. Grace, who is the chairman of the Cape Ann Citizens Association and was an elected member of the charter commission. The affidavit, which is contradicted by affidavits from either city officials or charter commission members, would carry little weight in any event because "[s]tatements of individual legislators as to their motives concerning legislation are an inappropriate source from which to determine the intent of legislation." *Boston Water & Sewer Commn.* v. *Metropolitan Dist. Commn.*, 408 Mass. 572, 578 (1990). Significantly, the affidavit is belied by the minutes of the charter commission, in which it appears that Grace proposed to add the phrase "for each new project" to § 5-4 for a different purpose: specifically so that, rather than being a standing committee as in the past, the design committee would be appointed on a project-by-project basis (as the city building committee always had been) to maximize expertise as to the particular building being constructed.

Regarding the second change in charter language, little support for the plaintiffs' position can be inferred from the addition of the words "or designer" after architect, as G. L. c. 7, § 38K, which is limited to building contracts, is itself expressed not in terms of architectural services but in terms of "design services." The term "design services" is defined in G. L. c. 7, § 38A½(b), as appearing in St. 1984, c. 189, § 5, as particular, itemized services rendered "in connection with any public *building* project" (emphasis added). A more plausible inference than that urged by the plaintiffs would be that the addition of "designer" was intended to bring the terminology of the charter into conformity with the State law of building contracting, an inference bolstered by the third aspect of the 1985 charter amendment, the simultaneous addition of the registration requirement, which also precisely mirrors the State building contracts law. See G. L. c. 7, §§ 38A½(b) & 38K.

In sum, we see nothing in the 1985 amendments to suggest that the purpose of those amendments went beyond including designers with architects, and changing the designer selection committee from standing to ad hoc.[6]   That appears to have

---

[6]One would typically expect clearer indicia of such a sweeping change. An example would be an expansion of the areas of expertise required on the committees, which under the plaintiffs' reading would now be obliged to review

been the broad understanding of responsible officials at the time and in 1991 when legal opinions were sought from the city counsel and the Attorney General. It would not be appropriate for a court, nearly fifteen years after the charter amendments, to divine that they had a purpose, obscure at best from their text, that would change the understanding that was widely shared and acted on in the intervening years. Where the view of the responsible officials represented a fair reading of the old and new charter provisions, we see no reason to depart from their construction. It follows that the North Gloucester STEP sewer project did not require the appointment of a designer selection committee and of a city building committee, and that the proposed betterments assessments were not invalid for that reason.

*Judgment affirmed.*

---

all public works projects (such as sewers and roads), as well as buildings. Another example might be the inclusion of a definition of the term "project" that plainly embraces both public buildings and public works. The terms "designer" and "project," although used in the predecessor sections, were not defined there, and were left undefined by the 1985 charter amendment, suggesting that their pre-1985 meanings did not change.